THE STATE OF OHIO *v.* OLIVER.

(No. 82 CRB 23217—Decided December 23, 1982.)

Hamilton County Municipal Court.

*Mr. James Ginocchio,* for plaintiff.
*Mr. Michael H. Siegler,* for defendant.

PAINTER, J. Defendant Oliver is charged with impersonating a peace officer or private policeman, an offense in violation of R.C. 2921.51(B). That statutory provision together with R.C. 2921.51(G) makes it a fourth degree misdemeanor for a person to "impersonate a peace officer or a private policeman." R.C. 2921.51(A)(1) defines a "peace officer" as meaning, *inter alia,* "* * * a sheriff, deputy sheriff, marshal, deputy marshal, member of the organized police department of a municipal corporation, or township constable, who is employed by a political subdivision of this state * * *." A "private policeman" is defined by R.C. 2921.51(A)(2) to mean "* * * any security guard, special policeman, private detective, or other person who is privately employed in a police capacity." Finally, R.C. 2921.51(A)(3) defines "impersonate" as follows:

" 'Impersonate' means to act the part of, assume the identity of, wear the uniform or any part of the uniform of, or display the identification of a particular person or of a class of persons *with purpose to make another person believe that the actor is that particular person or is a member of that class of persons.*" (Emphasis added.)

R.C. 2921.51(F) provides that it is an affirmative defense to a charge under R.C. 2921.51(B), the least serious of the crimes created by R.C. 2921.51(B) through (E), that the impersonation of the peace officer "* * * was for a lawful purpose."

The testimonial evidence adduced by the state at the trial of this matter consisted solely of the testimony of Deputy Sheriff Michael Hartzler of the Hamilton County Sheriff's Department and was, basically, as follows: On the evening of August 26, 1982, Hartzler was in the process of booking the defendant in Central Detention on a charge not related to the present matter. Hartzler ordered the defendant to empty his pockets, and Oliver complied with such order, producing the wallet that was introduced into evidence as State's Exhibit No. 1. That wallet contained several identification cards, one of which identified the defendant as a member of an organization called "International Marshal's Patrol." The defendant, either voluntarily or in response to questioning by Hartzler, stated several times that he was a deputy sheriff but that he did not work for Hamilton County or any other Ohio county or governmental agency. Rather, Oliver stated that he was employed by one Colonel Coleman of said International Marshal's Patrol, whose name appeared on the card in question.

Hartzler further testified that since, to the best of his knowledge, all deputy sheriffs in Ohio are employed by counties, and since Oliver had referred to himself as a deputy sheriff, he was impersonating a peace officer within the meaning of R.C. 2921.51(B). He, consequently, filed this charge against the defendant.

Hartzler admitted on cross-examination that he knew that Oliver was not, in actuality, a deputy sheriff of Hamilton County. He further admitted that the badge that the defendant carried was somewhat similar, but was by no means identical, to real badges issued to Hamilton County deputy sheriffs. Hartzler also stated that he, personally, was never fooled or tricked into believing that Oliver was, indeed, a genuine peace officer or deputy sheriff, and that the defendant, during this encounter, was not dressed in the uniform of, or attempting to assume the identity of, any such officer. Finally, Hartzler admitted on cross-examination that he had attempted just once, without success, to contact Coleman and had no knowledge whatsoever concerning that person or of the functions or activities of the International Marshal's Patrol.

Oliver, in his own defense, essentially testified as follows: He is employed at the Night Flight Lounge, on the west side of Cincinnati, as a bartender and disc jockey. Coleman has a contract with said lounge to provide security on its premises. Oliver testified that, in addition to his other duties at the Night Flight Lounge, he is further employed by Coleman as an undercover agent. In this capacity he attempts to prevent fights, drug sales and other unlawful or undesirable conduct from occurring at that lounge. Oliver further testified that he has been a member of Coleman's International Marshal's Patrol for more than two years; that members of said patrol are referred to among themselves and by Coleman as "deputy sheriffs"; that Coleman had formerly been affiliated with another, similar organization known as the International Crime Fighters, Inc.; and that Coleman had supplied Oliver with the various identification cards and the badge consisting of State's Exhibit No. 1. The above-summarized testimony by the

defendant was unrebutted by any evidence introduced by the state. Nor was it corroborated by any testimony of any colonels, foreign or domestic.

## Opinion

The testimony of Hartzler, at best, establishes a certain amount of semantic confusion about the status the defendant was claiming for himself during their interaction on the evening of August 26, 1982. It is conceded that Oliver said he was a deputy sheriff. However, he did not claim to work for Hamilton County or any other Ohio county. Rather, it is similarly conceded that the defendant specifically denied being so employed and affirmatively stated, on the contrary, that he was employed as a deputy sheriff by the International Marshal's Patrol. Because Hartzler believed all deputy sheriffs in Ohio are employed by counties, he charged Oliver with the substantive crime of impersonating established in R.C. 2921.51(B).

However, that provision makes it criminal to impersonate either a "peace officer," within the meaning of R.C. 2921.51(A)(1), or a "private policeman," within the meaning of R.C. 2921.51(A)(2). The latter status is defined to include any person "* * * who is privately employed in a police capacity." The defendant offered unrebutted testimony that he has been so employed in such capacity by Coleman, through the auspices of the International Marshal's Patrol, whatever that may be.

To this extent, therefore, Oliver was not impersonating a "private policeman" within the ambit proscribed by R.C. 2921.51(B). He was not guilty of so doing because, on the uncontradicted state of the record now before the court, Oliver was, in fact, a "private policeman"; or, at least the court could not find that he was not. Such a status is a totally lawful one as Ohio law has long recognized. *Fouts* v. *State* (1925), 113 Ohio St. 450. Additionally, Oliver's uncontroverted description of the duties he had at his place of employment through his role as a deputy sheriff of the International Marshal's Patrol (*i.e.*, preventing fights and drug trafficking, etc.) is sufficient to demonstrate that his status was for a "lawful purpose." See R.C. 2921.51(F) (creating an affirmative defense to prosecutions under R.C. 2921.51[B] where the impersonation is for such lawful purpose).

The fact that Hartzler may have never heard a private policeman referred to as a "deputy sheriff" is of no legal significance. Oliver made no attempt to mislead Hartzler into believing that he was, in reality, a Hamilton County deputy sheriff; and the state's only witness clearly admitted that he was not, in fact, misled in this manner by Oliver.

It is unclear to this court whether *Oliver* even knew his status. He testified he was a part-time bartender, a part-time sheriff, and a part-time model.

The gist of the various crimes of impersonating proscribed by R.C. 2921.51(B) through (E), like the analogous crime of impersonating a law enforcement officer under R.C. 2913.44, is the fraud of making a person believe that the actor enjoys a certain status or identity other than that which he, in actuality, possesses. See 28 Ohio Jurisprudence 3d 606-607, fn. 22, Criminal Law, Sections 2066-2067; and *Id.* at 608, Section 2071. While it is possible to speculate that some members of the general public may have been misled into believing that Oliver, by reason of the badge and identification documents he carried was, in truth, an official peace officer, that is not the case or the situation currently before this court.

Instead, in the case at bar there was no purpose on the defendant's part to make Hartzler believe that he was a deputy sheriff of Hamilton County. Furthermore, Hartzler by his own testimony was not so misled and never, in fact, believed that Oliver enjoyed that status. Consequently, Hartzler's special expertise and

personal knowledge of the defendant's non-official status totally prevented, as a matter of law, the commission of the crime of impersonation with which Oliver is presently charged, from having been committed. In any event, nothing in R.C. 2921.51(B) prohibits a private policeman, within the definition set forth in R.C. 2921.51(A)(2), from calling himself a deputy sheriff, provided he does not purport to represent public authority and so long as no fraud is committed thereby.

Finally, defendant did not, on the record before this court, ever "display" the identification of a peace officer as that word is employed in the definition of "impersonate" as set forth in R.C. 2921.51 (A)(3).

The evidence is clear that the items consisting of State's Exhibit No. 1 were not, at the time of Oliver's encounter with Hartzler, being worn by Oliver in a manner such that they were visible on the exterior of his person. On the contrary, these items were in one of the defendant's pockets and were handed over to Hartzler only upon his explicit order to Oliver that he do so. As the defendant was at the time of this transaction already in Hartzler's lawful custody, he had no choice but to obey that officer's lawful demand.

Under these facts, it cannot be reasonably concluded that Oliver "display[ed]" those items within the normal meaning of that word, or in the way that word is used either in R.C. 2921.51(A)(3) or in analogous criminal provisions of the Revised Code. Compare R.C. 2913.441 (making unlawful the knowing display of a law enforcement emblem on a motor vehicle). See, also, 28 Ohio Jurisprudence 3d 609, Criminal Law, Section 2072. The defendant never made a public showing or display of his cards or badge except under official compulsion. To convict him of a crime under these circumstances might raise delicate constitutional questions of self-incrimination under the Fifth Amendment to the United States Constitution.

For all the reasons and upon the basis of all the authorities set forth, this court hereby grants the defendant's motion for acquittal under Crim. R. 29 and finds him not guilty of impersonating a peace officer or private policeman under R.C. 2921.51(B).

*Defendant not guilty.*