The STATE of Ohio, Appellee,

v.

ASSAD, Appellant.

[Cite as *State v. Assad* (1992), 83 Ohio App.3d 114.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61403.

Decided Oct. 5, 1992.

115

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Joseph V. Hoffer,* Assistant Prosecuting Attorney, for appellee.

*Patrick A. D'Angelo,* for appellant.

---

SPELLACY, Judge.

On February 28, 1990, defendant-appellant Mohammed Assad ("appellant") was indicted by the Cuyahoga County Grand Jury for one count of carrying a concealed weapon, in violation of R.C. 2923.12. At his arraignment on March 22, 1990, appellant pleaded not guilty.

On January 10, 1991, appellant's bench trial commenced. The only witness to testify for the state was Officer Lawrence J. Stalter from the Rocky River Police Department.

Officer Stalter testified that on December 29, 1989, at approximately 12:05 a.m., he observed appellant failing to stop his car completely before the "stop-bar" at a red light. According to Officer Stalter, appellant stopped his car close enough to the intersection that he almost caused an accident with another car driving through the intersection.

Officer Stalter further testified that after appellant proceeded through the intersection, he activated his overhead lights in an attempt to stop appellant. Appellant pulled his car into the driveway of a house about four or five houses from the intersection.[1]

---

1. The house was the residence of appellant's brother-in-law.

Officer Stalter stated that appellant rapidly exited his automobile and approached the police cruiser. He asked Officer Stalter what he had done and Officer Stalter promptly informed him of the violation. Officer Stalter then observed another individual in the passenger seat. That person was later identified as appellant's nine-year-old son.

Officer Stalter then testified that he shone his flashlight into the front seat of appellant's car and saw the hand grip of a revolver underneath the driver's seat next to the transmission hump. Officer Stalter retrieved the gun. It was a fully loaded .38 caliber revolver.

Officer Stalter stated that appellant informed him that he was a store owner and that he was on his way home. However, he had no valuables and little money in his possession. At that point, appellant was arrested and transported to the police station.

Appellant testified on his own behalf that he owned two supermarkets and a convenience store and was a partial owner of another supermarket. His three stores were located at 3831 East 93rd Street, 889 Lakeview Road, and 2838 Fulton Road, all in the city of Cleveland, Ohio. Appellant claimed that all of the stores were located in high crime areas.

Appellant then testified about the robberies and violence in the areas surrounding his stores. He also testified that his stores had been previously robbed on several occasions. Thus, he carried a gun and installed alarm systems in his stores.

Appellant stated that in December 1989, he personally did all the banking for his stores on a daily basis. He would go to the different stores, take the money, deposit the money into the bank, and bring some cash back to the stores. At all times, he carried his gun. Appellant said that he registered the gun with the Cleveland police and received identification for it.

Appellant further testified that on the evening of December 28, 1989, he dropped off about $7,000 to $8,000 at his Fulton Road store. At about 11:45 p.m., he proceeded home with the gun in his possession. Appellant claimed that despite having little money on him personally, he took the gun home with him so he could have it in the morning to open another store the next day.

Appellant was arrested after he was stopped by the police, but he never got his gun back. He subsequently bought another gun in order to protect himself and his business.

During his cross-examination, appellant testified that he always carried a gun, since his stores were in very bad neighborhoods. On that particular night, his son was with him because he had been working in the stores with him.

At the close of all the evidence, the trial court found appellant guilty of carrying a concealed weapon. The trial court specifically found that appellant failed to prove the affirmative defense set forth in R.C. 2923.12(C)(1).

Appellant was subsequently sentenced to a term of one year, but execution of the sentence was suspended. Appellant was placed on a one-year probation.

Appellant filed a timely notice of appeal and subsequently raised the following assignment of error:

"The verdict is against the weight of the evidence."

Appellant basically contends that his conviction of carrying a concealed weapon was against the manifest weight of the evidence, since he proved, by a preponderance of the evidence, the affirmative defenses set forth in R.C. 2923.12(C)(1) and (C)(2).

R.C. 2923.12(C)(1) and (C)(2) provide as follows:

"(C) It is an affirmative defense to a charge under this section of carrying or having control of a weapon other than dangerous ordinance, that the actor was not otherwise prohibited by law from having the weapon, and that any of the following apply:

"(1) The weapon was carried or kept ready at hand by the actor for defensive purposes, while he was engaged in or was going to or from his lawful business or occupation, which business or occupation was of such character or was necessarily carried on in such manner or at such a time or place as to render the actor particularly susceptible to criminal attack, such as would justify a prudent man in going armed.

"(2) The weapon was carried or kept ready at hand by the actor for defensive purposes, while he was engaged in a lawful activity, and had reasonable cause to fear a criminal attack upon himself or a member of his family, or upon his home, such as would justify a prudent man in going armed."

Appellant argues that the facts of this case demonstrate that he had reasonable cause to fear criminal attack upon himself, such that he was justified in carrying a gun from his stores to his home.

An appellate court has the power to determine that a conviction was against the manifest weight of the evidence. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. The court must review the entire record, weigh the evidence and all reasonable inferences, and consider witness credibility. *State v. Davis* (1988), 49 Ohio App.3d 109, 550 N.E.2d 966; *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218, 485 N.E.2d 717, 720.

The evidence adduced at trial revealed that appellant owned several stores in very high crime areas. Appellant testified that he often carried large

sums of cash from store to store and was afraid of being robbed. He stated that his stores had been robbed on several occasions.

We find that although appellant did not have a large sum of money on him when he was stopped by the police, he did have a reasonable belief that he may have been criminally attacked when he left the Fulton Road store. Appellant departed the Fulton Road store at a very late hour and he was required to leave in a very high crime area. Being a store owner, appellant was justified in believing that he might have been stopped and robbed.

Thus, we conclude that appellant presented sufficient competent and credible evidence to support his affirmative defenses pursuant to R.C. 2923.12(C)(1) and (C)(2).

Appellant's assignment of error is well taken and is sustained.

Trial court judgment is reversed.

*Judgment reversed.*

NAHRA, P.J., and PATTON, J., concur.