The STATE of Ohio, Appellee,

v.

DOSS, Appellant.

[Cite as *State v. Doss* (1996), 111 Ohio App.3d 63.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68785.

Decided May 13, 1996.

64

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Peter J. Gauthier,* Assistant Prosecuting Attorney, for appellee.

*Paul Mancino, Jr.,* for appellant.

JAMES M. PORTER, Judge.

Defendant-appellant Carl Doss appeals from his conviction following a jury trial for carrying a concealed weapon (R.C. 2923.12), with a violence specification, and impersonating a peace officer (R.C. 2921.51). Defendant asserts twelve assignments of error raising numerous due process and procedural issues. We find merit to the appeal and reverse the judgment and discharge the defendant for the reasons stated below.

The charges arose initially out of a traffic stop in Bratenahl, Ohio. On September 17, 1993, the defendant was stopped for speeding on I–90 by Bratenahl police officers. At 2:25 a.m., radar clocked the defendant at seventy m.p.h. in a fifty-five m.p.h. zone. The arresting officer recognized defendant's vehicle as one they had stopped for speeding on I–90 eight days earlier on September 9, 1993.

The police officers testified that during that previous stop on September 9, the defendant had flashed a gold police badge that said "Chief" and "O.I.P.B." and identified himself as Chief of Police to the officers. When asked to produce some other kind of identification, the defendant produced a business card for the Ohio Investigation Protection Bureau and a firearms permit card from the Ohio Department of Commerce. The identification and permit told the officers that defendant was a licensed private investigator/security guard provider who was authorized to carry three different kinds of guns. A pat-down search on September 9 revealed a loaded 9mm firearm in a shoulder holster. Defendant was strongly advised that he was not a police chief or police officer and that he should not identify himself that way. Unsure of the privileges and/or limits of a firearm permit, the officers returned the weapon to defendant, who was then cited only for speeding and released.

On September 17, once they had pulled him over, the same officers asked defendant for identification and asked him to get out of the automobile. Defendant exhibited a gold police badge on a chain around his neck, showed it to the officer and stated that he was a detective and on his way home. Doss apologized for speeding because he was in a hurry. At this point, he was placed under arrest for obstruction of official business and carrying a concealed weapon. A loaded 9mm firearm was removed from a shoulder holster, which was underneath a blue quilted bulletproof vest being worn by the defendant. A number of other items were confiscated from his car including handcuffs, additional ammunition, two badges, and red and blue lights, and the vehicle itself, a 1987 Plymouth with spotlight and siren, was impounded.

George Paree, from the Department of Commerce, testified at trial that his division licenses security guard providers and private investigators, that defen-

dant had a Class A license which meant that he could provide private investigator services and also be a security guard provider, and that defendant had a license to carry firearms which included a revolver, a shotgun, and a semiautomatic pistol.

After the prosecution rested, defendant's motion for judgment of acquittal was overruled by the court.

Defendant called Brother Michael O'Grady, who was stationed at St. Aloysius Church. Brother O'Grady testified that defendant was hired to do security work at the parish church, that he watched the parking lots, that he carried a weapon, that defendant was extremely professional, and that at times he had other persons working for him who wore similar uniforms. The defendant and his employees wore dark blue pants and blue shirts as a uniform.

Allen Ratz, a gunshop owner in Eastlake, also testified that defendant came in and engaged in target practice with a semiautomatic on a regular basis, and that defendant had ordered a Glock and a Colt Detective Special from him.

Defendant testified on his own behalf. He had gone to the private police academy at Case Western Reserve University in 1982, completing one hundred thirty-five hours of course work. He produced evidence of a private police certificate and training book and stated he had been trained to be a private policeman. He identified a state private investigator's, security guard provider certificate that he had since 1986. Defendant testified that he had been in business for fifteen years, that he had contracts for security guard services with Pizza Hut, Kentucky Fried Chicken and Taco Bell, and that he patrolled their properties wearing a uniform. He testified that on his uniform he had a patch with the name Ohio Investigation Protection Bureau, which was one of his security businesses, and that he was chief of the Ohio Investigation Protection Bureau. His place of business was 1148 Euclid Avenue, in downtown Cleveland. One of his badges read "Chief, C.E. Doss."

Defendant identified his bulletproof vest as the vest he was wearing on September 17, 1993. He carried weapons for defensive purposes in the course of his security services. He testified that the pistol cartridges he had were for practice and the magazine was for his Glock semiautomatic weapon. He further identified items that were taken from his vehicle and stated that he was licensed by the city of Cleveland as a private police commission issued every year. His security business had a patrol unit of twelve cars and twenty-five agents who worked for his company.

Prior to the time of his arrest and beginning September 16, 1993, defendant testified that he worked radio dispatch. About 2:00 a.m. on September 17, he left the office as his brother had called him. He was on his way to check various

locations for which he had security contracts in the East Cleveland area. He identified a withdrawal slip for $600 which he withdrew on September 16, 1993, accounting for the money he had on his person. He testified that at the time he was wearing his bulletproof vest.

Defendant testified that when he was stopped by the Bratenahl police he showed his identification from the state and his driver's license and asked the officer what the problem was. He never told them that he was a peace officer or a law enforcement officer. He was asked to step out of his car. Defendant testified that he was on his way to Pizza Hut because there was a lot of vandalism and he wished to check that property and a church located at East 177th Street and Euclid Avenue where his brother was a minister. Pizza Hut and the church were in a high-crime area of East Cleveland that was populated by numerous gangs.

Defendant was indicted on February 7, 1994 and entered a plea of not guilty at his arraignment on September 13, 1994. On February 21, 1995, defendant's motion to dismiss for lack of a speedy trial was heard and denied. A jury trial was commenced on February 27, 1995, and on March 3, 1995, the jury returned guilty verdicts as previously mentioned. On March 8, 1995, the court sentenced defendant to serve four to ten years on the concealed weapon charge at Lorain Correctional Institution and five to ten years for impersonation of a police officer. The court suspended sentence on the second offense and ordered five years' probation to commence on his release from prison.

A timely appeal herein ensued.

We will first address Assignments of Error X and XI because they are dispositive of this appeal.

"X. Defendant was denied due process of law when he was convicted of impersonating a police officer when the statute did not apply to the defendant in the circumstances presented in this case."

This appeal presents the extraordinary situation where a state-licensed private policeman/security guard authorized to carry a firearm was charged and convicted of impersonating a peace officer and carrying a concealed weapon while in the course of conducting his security business. We find from a careful review of the record that the evidence was insufficient to sustain the convictions for these offenses and that the motions for acquittal should have been granted. In addition, we find that the convictions were against the manifest weight of the evidence.

The standard of review with regard to the sufficiency of evidence is set forth in *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus:

"Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." See, also, *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394, 399; *State v. Davis* (1988), 49 Ohio App.3d 109, 113, 550 N.E.2d 966, 969–970.

*Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, in which the Ohio Supreme Court held:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" See, also, *State v. Garner* (1995), 74 Ohio St.3d 49, 60, 656 N.E.2d 623, 634.

■ When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence not its mere legal sufficiency. The defendant has a heavy burden in overcoming the factfinder's verdict.

■■ As this court has stated:

"The weight to be given evidence and the credibility of witnesses are determinations to be made by the triers of fact. *State v. Thomas* (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. If there was sufficient evidence for the triers of fact to find a defendant guilty beyond a reasonable doubt this court will not reverse a guilty verdict based on manifest weight of the evidence. *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177, 103 L.Ed.2d 239." *State v. Rios* (1991), 75 Ohio App.3d 288, 291, 599 N.E.2d 374, 376. See, also, *State v. Jenks, supra,* 61 Ohio St.3d at 273, 574 N.E.2d at 503.

Count two of the indictment charged defendant with the crime on September 17, 1993 of "impersonat[ing] a peace officer and/or [doing] so with purpose to facilitate the commission of a felony, to wit: Carrying Concealed Weapon, O.R.C. 2923.12 * * * in violation of Section 2921.51 of the Ohio Revised Code." The statute states in full text:

"(A) As used in this section:

"(1) 'Peace officer' means a sheriff, deputy sheriff, marshal, deputy marshal, member of the organized police department of a municipal corporation, or township constable, who is employed by a political subdivision of this state, a member of a police force employed by a metropolitan housing authority under division (D) of section 3735.31 of the Revised Code, a state university law enforcement officer appointed under section 3345.04 of the Revise Code, an Ohio veterans' home policeman appointed under section 5907.02 of the Revised Code, or a state highway patrol trooper and whose primary duties are to preserve the peace, to protect life and property, and to enforce the law, ordinances, or rules of the state or any of its political subdivisions.

"(2) 'Private policeman' means any security guard, special policeman, private detective, or other person who is privately employed in a police capacity.

"(3) 'Impersonate' means to act the part of, assume the identity of, wear the uniform or any part of the uniform of, or display the identification of a particular person or of a member of a class of persons with purpose to make another person believe that the actor is that particular person or is a member of that class of persons.

"(B) No person shall impersonate a peace officer or a private policeman.

"(C) No person, by impersonating a peace officer or a private policeman, shall arrest or detain any person, search any person, or search the property of any person.

"(D) No person, with purpose to commit or facilitate the commission of an offense, shall impersonate a peace officer, a private policeman, or an officer, agent, or employee of the state.

"(E) No person shall commit a felony while impersonating a peace officer, a private policeman, or an officer, agent, or employee of the state.

"(F) It is an affirmative defense to a charge under division (B) of this section that the impersonation of the peace officer was for a lawful purpose.

"(G) Whoever violates division (B) of this section is guilty of a misdemeanor of the fourth degree. Whoever violates division (C) or (D) of this section is guilty of a misdemeanor of the first degree. If the purpose of a violation of division (D) of this section is to commit or facilitate the commission of a felony, a violation of division (D) is a felony of the third degree. Whoever violates division (E) of this section is guilty of a felony of the second degree."

What the state had to prove below beyond a reasonable doubt was the paradoxical conclusion that a "private policeman," which defendant was by statutory definition, was guilty of impersonating a "peace officer," also defined by

the statute. Defendant contends that the statute does not cover the situation presented and the state failed to establish the necessary elements of the offense.

Defendant was charged under R.C. 2921.51, which provides that "[n]o person shall impersonate a peace officer or a private policeman" or commit a felony while so acting. The state conceded that defendant was a licensed private investigator and a licensed security guard at the time of his arrest. The issue turns on whether the conduct of defendant as a private policeman in the peculiar circumstances of this case could be found to be impersonating a peace officer beyond a reasonable doubt.

■ At no point in the course of the September 17 stop, arrest or booking did defendant ever identify himself or insinuate in any fashion by his conduct or appearance that he was "a sheriff, deputy sheriff, marshal, deputy marshal, member of the organized police department of a municipal corporation" or any of the other "peace officers" as defined in R.C. 2921.51(A)(1). He did not hold himself out as a "peace officer." He told the Bratenahl policeman that he was a detective, which is consistent with the definition of a private policeman under R.C. 2921.51(A)(2).

Furthermore, there is no evidence that defendant "impersonated" a peace officer, much less that he intended to do so. The word "impersonate" is specifically defined by this statute to mean "to act the part of, assume the identity of, wear the uniform or any part of the uniform of, or display the identification of a particular person or of a member of a class of persons with purpose to make another person believe that the actor is that particular person or is a member of that class of persons." A private policeman does not impersonate an officer under R.C. 2921.51 simply by carrying identification stating that he is a member of a patrol organization. *State v. Oliver* (1982), 8 Ohio Misc.2d 8, 8 OBR 67, 456 N.E.2d 591. A private policeman carrying identification cards and a badge in a wallet, and showing or presenting them only under order from an arresting officer, is not "displaying" the identification under the usual meaning of the word as used in R.C. 2921.51. *Id.* at 11, 8 OBR at 70, 456 N.E.2d at 594. The actual acts of defendant described by the state's witnesses in this case do not demonstrate an impersonation of a peace officer, but literally demonstrate the personification of a private policeman, which he was.

Sgt. Joseph Fischbach testified to the colloquy with defendant on September 17 as follows:

"Q. Okay. After Mr. Doss, on September 17th, was brought to the rear of the vehicle, what happened then?

"A. I approached Mr. Doss, and I asked him, 'Who are you?' And he stated to me that, 'I'm Detective Carl E. Doss.'"

When questioned, defendant showed an identification card, which the officer admitted, showed that defendant was a licensed private investigator/security guard provider which allowed defendant to carry three different kinds of weapons.

Further, when examined about defendant's business card, the following was stated:

"Q.  And it's a business card that was given to you on September 9th by Carl E. Doss;  is that correct?

"A.  That's correct.

"Q.  And that business card identified itself [*sic*] as the Ohio Investigation Protection Bureau;  is that right?

"A.  Correct.

"Q.  So the night that Carl E. Doss was arrested by you, you knew that he had a company called Ohio Investigation Protection Bureau;  is that correct?

"A.  Correct."

The officer agreed that by the statute a private policeman means a security guard, special policeman, private detective, or other persons employed in a private police capacity.

The other officer, Patrolman Michael Corsillo, testified as follows:

"Q.  What happened when you got up to the car window?

"A.  When I approached the car window, I asked the driver for his operator's license.  At that time, he was wearing a blue quilted jacket, like a liner to a jacket, blue pants, and he had a chain around his neck, and it had a police badge connected to the chain, and in the middle in blue it said detective.

"Q.  Showing you what's marked for purposes of identification as State's Exhibit No. 5, can you identify that object, please.

"A.  Yes.  This was what he was wearing when I approached the auto.  This was around his neck.

"Q.  So you asked for his license, and what did he do, physically do?

"A.  He physically showed me this badge like this, and stated, 'I'm a detective. I'm on my way home.'  (Demonstrating)"

The testimony of the officers themselves established that defendant did not impersonate a peace officer.  Obviously, defendant was a private policeman and use of the word "police" could be by definition a private policeman or "special policeman" and "other person who is privately employed in a police capacity." The use of the generic word "detective" could apply as well to his services as a

private policeman. What defendant stated to the Bratenahl police was literally true and to be sentenced to a term of imprisonment for five to fifteen years in these circumstances is unjust and unwarranted.

Although we have found no appellate decisions construing the statute, it is presumed that the intent of R.C. 2921.51 is to prevent the misleading of persons who might misapprehend the power or influence of an actor by relying on the impersonation. Yet in the instant case, both police officers testified that they were under no such misapprehension and knew that defendant was not a peace officer but only a security guard provider. Both officers were of the opinion that the defendant was merely attempting to "beat the speeding ticket." Sgt. Fischbach testified "that he was not a policeman, correct." Patrolman Corsillo testified "he was not a police officer."

The only relevant reported decision on this subject appears to be *State v. Oliver, supra,* 8 Ohio Misc.2d 8, 8 OBR 67, 456 N.E.2d 591. There, defendant was charged with impersonating a peace officer or private policeman in violation of R.C. 2921.51(B) while being booked by a Hamilton County deputy sheriff on an unrelated charge. Defendant's wallet contained a business card identifying defendant as a member of "International Marshal's Patrol." Defendant stated several times that he was a deputy sheriff but that he did not work for Hamilton County or any other governmental agency. The deputy sheriff knew that defendant was not a deputy sheriff, so there was no "impersonation." The court stated:

"The gist of the various crimes of impersonating proscribed by R.C. 2921.51(B) through (E), like the analogous crime of impersonating a law enforcement officer under R.C. 2913.44, is the fraud of making a person believe that the actor enjoys a certain status or identity other than that which he, in actuality, possesses. See 28 Ohio Jurisprudence 3d 606–607, fn. 22, Criminal Law, Sections 2066–2067; and *Id.* at 608, Section 2071. While it is possible to speculate that some members of the general public may have been misled into believing that Oliver, by reason of the badge and identification documents he carried was, in truth, an official peace officer, that is not the case or the situation currently before this court.

"Instead, in the case at bar there was no purpose on the defendant's part to make Hartzler believe that he was a deputy sheriff of Hamilton County. Furthermore, Hartzler by his own testimony was not so misled and never, in fact, believed that Oliver enjoyed that status. Consequently, Hartzler's special expertise and personal knowledge of the defendant's non-official status totally prevented, as a matter of law, the commission of the crime of impersonation with which Oliver is presently charged, from having been committed. In any event, nothing in R.C. 2921.51(B) prohibits a private policeman, within the definition set forth in R.C. 2921.51(A)(2), from calling himself a deputy sheriff, provided he does not

purport to represent public authority and so long as no fraud is committed thereby." *Id.,* 8 Ohio Misc.2d at 10–11, 8 OBR at 69–70, 456 N.E.2d at 594.

We find that defendant's conduct herein did not come within the scope of the statute nor did the state prove a violation of the statute beyond a reasonable doubt. A judgment of acquittal should have been entered on defendant's Crim.R. 29(A) motion.

This assignment of error is sustained.

"XI. Defendant was denied due process of law when his motion for judgment of acquittal was overruled as to the offense of carrying a concealed weapon."

Defendant was also convicted of carrying a concealed weapon under R.C. 2923.12, which states:

"(A) No person shall knowingly carry or have, concealed on his person or concealed ready at hand, any deadly weapon or dangerous ordnance.

"(B) This section does not apply to officers, agents, or employees of this or any other state or the United States, or law enforcement officers, authorized to carry concealed weapons or dangerous ordnance, and acting within the scope of their duties.

"(C) It is an affirmative defense to a charge under this section of carrying or having control of a weapon other than dangerous ordnance, that the actor was not otherwise prohibited by law from having the weapon, and that any of the following apply:

"(1) The weapon was carried or kept ready at hand by the actor for defensive purposes, while he was engaged in or was going to or from his lawful business or occupation, which business or occupation was of such character or was necessarily carried on in such manner or at such a time or place as to render the actor particularly susceptible to criminal attack, such as would justify a prudent man in going armed.

"(2) The weapon was carried or kept ready at hand by the actor for defense purposes, while he was engaged in a lawful activity, and had reasonable cause to fear a criminal attack upon himself or a member of his family, or upon his home, such as would justify a prudent man in going armed."

The evidence is undisputed that defendant was licensed as a private policeman because he was licensed as both a private investigator and a security guard provider.

Defendant was licensed with respect to a shotgun, a handgun and a semiautomatic pistol. The undisputed evidence was that defendant was arrested when stopped for speeding on his way to pursue his security duties in a high-crime area

in the middle of the night. He was in uniform and had a quilted bulletproof vest on. The gun that was found on him was in his shoulder holster under the vest.

■ Under R.C. 2923.12(C)(2), it is an affirmative defense to a carrying a concealed weapon charge if the actor is not otherwise prohibited by law from carrying the weapon and "[t]he weapon was carried or kept ready at hand by the actor for defensive purposes, while he was engaged in a lawful activity, and had reasonable cause to fear a criminal attack upon himself * * * such as would justify a prudent man in going armed." The state did not refute the fact that defendant was on his way to provide security services and investigate several locations for his clients. Nor did the state contest the facts that defendant was armed for defensive purposes and that East Cleveland was a high-crime area. Both arresting officers agreed that they were unfamiliar with the criminal activity in East Cleveland. The evidence on this issue was not such that reasonable minds could have reached different conclusions. The uncontradicted evidence established that defendant had proven the affirmative defenses contained in the carrying-a-concealed-weapon statute.

This case is controlled by our decision in *State v. Assad* (1992), 83 Ohio App.3d 114, 614 N.E.2d 772. Defendant Assad was stopped in the driveway of his home for a traffic offense committed a short distance away. The police found a gun under the driver's seat. Defendant testified that he owned three stores in high-crime areas of Cleveland. He had just dropped off a large sum of money and was proceeding home with a gun in his possession for protection. He took the gun home with him so that he would have it when he opened another store in the morning. Defendant was found guilty. Upon appeal his conviction was reversed, this court ruling as follows:

"Appellant argues that the facts of this case demonstrate that he had reasonable cause to fear criminal attack upon himself, such that he was justified in carrying a gun from his stores to his home.

"An appellate court has the power to determine that a conviction was against the manifest weight of the evidence. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. The court must review the entire record, weigh the evidence and all reasonable inferences, and consider witness credibility. *State v. Davis* (1988), 49 Ohio App.3d 109, 550 N.E.2d 966; *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218, 485 N.E.2d 717, 720.

"The evidence adduced at trial revealed that appellant owned several stores in very high crime areas. Appellant testified that he often carried large sums of cash from store to store and was afraid of being robbed. He stated that his stores had been robbed on several occasions.

"We find that although appellant did not have a large sum of money on him when he was stopped by the police, he did have a reasonable belief that he may have been criminally attacked when he left the Fulton Road store. Appellant departed the Fulton Road store at a very late hour and he was required to leave in a very high crime area. Being a store owner, appellant was justified in believing that he might have been stopped and robbed.

"Thus, we conclude that appellant presented sufficient competent and credible evidence to support his affirmative defenses pursuant to R.C. 2923.12(C)(1) and (C)(2).

"Appellant's assignment of error is well taken and is sustained." *Id.,* 83 Ohio App.3d at 117–118, 614 N.E.2d at 774.

The undisputed evidence in this case shows that defendant did carry a gun for a lawful purpose. Defendant had an ongoing lawful business to supply security services to various customers threatened by gang activity in high-crime areas. There was no reason to doubt the bona fides of defendant's reasons for carrying the weapon and wearing a bulletproof vest.

Defendant was specially authorized to carry a firearm. He fully complied with R.C. 4749.10 and was licensed by the city of Cleveland as an armed security guard. This issue turns on whether there was sufficient credible evidence to show that the defendant was justified in having the weapon on his person. Defendant's testimony on this issue stands uncontradicted. A criminal conviction cannot be sustained on such inadequate evidence. An appellate court shall not "abdicate its responsibility to enter a judgment of acquittal when the evidence is legally insufficient to sustain a conviction." *State v. Goodin* (1978), 56 Ohio St.2d 438, 442, 10 O.O.3d 533, 536, 384 N.E.2d 290, 293. We find that defendant should have been acquitted of the concealed weapon charge on his Crim.R. 29(A) motion at the close of the evidence. We also find that this is one of those exceptional cases where "the jury clearly lost its way and created such a manifest miscarriage of justice" that the conviction must be reversed as against the manifest weight of the evidence.

Assignment of Error XI is sustained.

We also find that our foregoing disposition of the appeal makes it unnecessary to address the other ten assignments of error which are moot. App.R. 12(A)(1)(c).

The judgment is reversed; defendant is discharged.

*Judgment reversed.*

PATRICIA ANN BLACKMON, P.J., and TIMOTHY E. MCMONAGLE, J., concur.