{¶ 1} Defendant-appellant, Gary Forgac, appeals from a Youngstown Municipal Court decision convicting him of impersonating a peace officer, following a bench trial.
 {¶ 2} On or about July 13, 2001, appellant was traveling on Elm Street in Youngstown, Ohio when he claims he heard a woman's screams coming from the house at 935 Elm Street. Upon hearing the screams, appellant stopped at the house. At the time, appellant was wearing a Youngstown Security Patrol, Inc. ("YSP") uniform and was driving a Chevy Blazer with a light bar and the word "patrol" on the side. Witnesses testified that appellant identified himself as a police officer.
 {¶ 3} Appellant jumped out of his car and ran towards the front porch where seven or eight people were sitting and had been yelling goodbye to a friend. Appellant pointed a gun at the people on the porch and shouted at them. One of the residents of the house called the Youngtown Police Department.
 {¶ 4} Several Youngstown Police Officers arrived at the scene. Appellant told Officer John Bokesch that he worked for YSP. Officer Bokesch asked appellant if he had any identification and appellant produced a document, which may have been an expired constable commission.
 {¶ 5} Appellant was charged with impersonating a peace officer or private police officer and the improper handling of a firearm in a motor vehicle. Prior to trial, plaintiff-appellee, the State of Ohio, dismissed the improper handling of a firearm charge. The case proceeded to a bench trial on October 4, 2001. The court found appellant guilty of impersonating a peace officer in violation of R.C. 2921.51(B), a fourth-degree misdemeanor. On March 12, 2002, the trial court sentenced appellant to 30 days in jail, suspended; two years probation; a $250 fine, suspended; and costs. Appellant filed a timely notice of appeal that same day.
 {¶ 6} At the outset, we should note that appellee has failed to file a brief in this matter. Therefore, we may accept appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action. App.R. 18(C).
 {¶ 7} Appellant raises three assignments of error. His first two assignments of error share a common basis in law and fact. Thus, we will address them together. They state:
 {¶ 8} "The Trial Court Erred When Defendant/Appellants [sic.] Criminal Rule 29 Motion For Judgment Of Acquittal Was Denied As The Defendant's Conduct Did Not Violate Ohio Revised Code Section 2921.51(B)."
 {¶ 9} "Defendant/Appellant's Conviction For Impersonating A Police Officer Under Ohio Revised Code Section 2921.51(B) Should Be Reversed As Against The Manifest Weight Of The Evidence."
 {¶ 10} Appellant claims the trial court erred in denying his Crim.R. 29 motion for acquittal because the evidence was insufficient to support a conviction. Appellant compares his case to State v. Doss
(1996), 111 Ohio App.3d 63. In Doss, the Eighth District Court of Appeals reversed the defendant's convictions for impersonating a peace officer and carrying a concealed weapon, finding they were against both the sufficiency and the manifest weight of the evidence. In Doss, the police had stopped the defendant for speeding. The arresting officers observed the defendant's security uniform and the defendant identified himself as a "detective." At the time of his arrest, the defendant was a licensed private investigator and a licensed security guard.
 {¶ 11} The court noted that the defendant never identified himself or insinuated by his conduct or appearance that he was "a sheriff, deputy sheriff, marshal, deputy marshal, member of the organized police department of a municipal corporation" nor did he hold himself out as a "peace officer." Id. at 70. The court observed that the defendant identified himself as a detective, which is consistent with the definition of a private policeman under R.C. 2921.51(A)(2). Id. The court stated that a private policeman does not impersonate an officer simply by carrying identification stating that he is a member of a patrol organization. Id. It further stated that a private policeman who carries identification cards and a badge in a wallet, and shows them under order from an arresting officer, does not "display" the identification under the usual meaning of the word as used in R.C. 2921.51. Id. The court determined that the use of the word "police" by the defendant could be by definition a private policeman, "special policeman," or "other person who is privately employed in a police capacity." Id. at 71. The court noted that although the defendant identified himself as a "detective," the use of the word "detective" could apply as well to his services as a private policeman. Id. at 71-72. Finally, the court, citing State v. Oliver
(1982), 8 Ohio Misc.2d 8, reasoned that the purpose of R.C. 2921.51 was "to prevent the misleading of persons who might misapprehend the power or influence of an actor by relying on the impersonation." Id. at 72.
 {¶ 12} Appellant notes that he is a licensed, private security provider. Appellant points to the following testimony to support his position. He was not wearing any type of uniform that could have been misconstrued as Youngstown Police Department or Mahoning County Sheriff's uniform. (Tr. 24-25). His car did not resemble a YPD police cruiser or sheriff's deputy car. (Tr. 26). Appellant did not flash a police badge. (Tr. 25-26). He did not investigate anything or arrest anyone. (Tr. 112). Appellant did not produce a purported constable commission until asked by the police to do so. (Tr. 65). He never claimed to work for anyone other than YSP. (Tr. 73, 78).
 {¶ 13} Appellant next argues that although he identified himself to the Elm Street residents as a police officer, this does not rise to the level of impersonating a police officer. Citing, Id. at 71. Furthermore, he points out that the Elm Street residents did not believe him to be a police officer. (Tr. 14, 37).
 {¶ 14} We review the denial of a Crim.R. 29 motion for acquittal under the same standard that appellate courts use to review a sufficiency of the evidence claim. State v. Rhodes, 7th Dist. No. 99-BA-62,2002-Ohio-1572, at ¶ 9; State v. Carter (1995), 72 Ohio St.3d 545,553.
 {¶ 15} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict.State v. Smith (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.Smith, 80 Ohio St.3d at 113.
 {¶ 16} Alternatively, in determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins,78 Ohio St.3d at 387. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 17} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 18} The court convicted appellant of impersonating a peace officer or private police officer in violation of R.C. 2921.51(B), which provides: "No person shall impersonate a peace officer or a private police officer." R.C. 2921.51(A) provides important definitions, which we must consider in determining if appellant's conviction was supported by the evidence. It provides:
 {¶ 19} "(1) `Peace officer' means a sheriff, deputy sheriff, marshal, deputy marshal, member of the organized police department of a municipal corporation, or township constable, who is employed by a political subdivision of this state, a member of a police force employed by a metropolitan housing authority * * *, a member of a police force employed by a regional transit authority * * *, a state university law enforcement officer * * *, an Ohio veterans' home police officer * * *, a special police officer employed by a port authority * * *, or a state highway patrol trooper and whose primary duties are to preserve the peace, to protect life and property, and to enforce the laws, ordinances, or rules of the state or any of its political subdivisions.
 {¶ 20} "(2) `Private police officer' means any security guard, special police officer, private detective, or other person who is privately employed in a police capacity.
 {¶ 21} "(3) `Impersonate' means to act the part of, assume the identity of, wear the uniform or any part of the uniform of, or display the identification of a particular person or of a member of a class of persons with purpose to make another person believe that the actor is that particular person or is a member of that class of persons." R.C. 2921.51(A).
 {¶ 22} The following evidence was adduced at trial. Brad Meehan, one of the residents at the Elm Street home, testified first. He stated that appellant pulled up in front of his house in a car marked "patrol" and approached him and the others on the porch. (Tr. 8). He testified appellant waived a gun at them and shouted profanities. (Tr. 8). Meehan testified appellant pointed the gun at each of the people on the porch. (Tr. 12). Appellant identified himself as a police officer. (Tr. 14). But Meehan did not believe him. (Tr. 14, 16). Meehan stated appellant wore a uniform that consisted of tan shirt and pants with a badge and a gun belt with a holster. (Tr. 18).
 {¶ 23} Benjamin Valdez, another resident of the Elm Street home, testified next. Valdez also testified that appellant pulled in front of the house and exited his car with a gun. (Tr. 31). He stated that the car had "cruiser's" lights on it. (Tr. 31). Valdez stated that appellant yelled at them with his gun in his hand. (Tr. 32). Valdez testified appellant identified himself as a cop. (Tr. 35). He also testified appellant talked about the people he had arrested and how much money he made as a cop. (Tr. 35). After five or ten minutes, Valdez called the Youngstown Police. (Tr. 36, 40). Valdez stated that when he told appellant he could not point a gun at them appellant responded, "Oh, I'm a cop." (Tr. 37). Valdez testified that appellant was "trying to be an officer." (Tr. 39). He testified that the way appellant pulled up in front of the house in a hurry and threw the car into gear was similar to how he had observed cops respond to emergencies. (Tr. 49).
 {¶ 24} Officer Bokesch testified next. He testified that he asked appellant under what authority he was investigating the Elm Street house and appellant responded that he was a police officer. (Tr. 57). When Officer Bokesch asked appellant who he worked for, appellant told him he worked for YSP. (Tr. 57). Officer Bokesch further testified that he asked appellant about his credentials and appellant showed an expired constable commission from 1985. (Tr. 57, 60, 62). He testified that appellant told him he had the exact powers that Officer Bokesch did as a police officer. (Tr. 57, 62).
 {¶ 25} Detective Sergeant James Pasquale was the next witness. He testified that appellant produced a constable identification from 1985. (Tr. 78). Detective Pasquale testified appellant told him he was a police officer and worked for a police department, YSP. (Tr. 78). He testified that he knew appellant was not a Youngstown Police Officer or a Mahoning County Sheriff's Deputy. (Tr. 87).
 {¶ 26} Joseph Rerko, one of appellant's co-workers, testified next. Rerko testified that appellant was employed by YSP on the date in question. (Tr. 94). He also testified that YSP's duties are to secure buildings and watch parking lots where they are contracted to do so. (Tr. 90).
 {¶ 27} Appellant testified last. He testified he is the superintendent of patrol for YSP, which provides private security services. (Tr. 101-103). He testified that on the night in question he was driving down Elm Street when he heard screaming coming from a house, which led him to believe something was wrong. (Tr. 106). He testified he stopped at the house and pulled out his gun because he thought someone was getting hurt. (Tr. 107). Appellant testified that upon approaching the porch he stated, "Okay. The police are here. What's the matter?" (Tr. 108). He stated that the people on the porch yelled at him and he responded, "* * * you're taking a police car off the road." (Tr. 109). Appellant testified that the people on the porch told him that they were going to call the "real police" and he responded, "I am the real police." (Tr. 111). He stated that he never investigated the inside of the house nor did he search or arrest anyone. (Tr. 111-12). He stated he was wearing a YSP uniform. (Tr. 112). When asked if he ever told anyone he was a Youngstown Police Officer, appellant said, "Yes, I mentioned it to the officer * * *." (Tr. 113). Counsel then rephrased the question and asked, "Did you tell them that you were currently a Youngstown Police officer? Did you tell them that you had been in the past?" (Tr. 113). Appellant responded, "Currently * * *." (Tr. 113). Later, appellant testified that he was pointing out that Youngstown was one of the "real" police departments he had worked for in his 30 years of experience. Next, appellant stated that he showed an officer a constable card when the officer asked for it. (Tr. 117).
 {¶ 28} In Doss, the court stated the purpose of R.C. 2921.51 was "to prevent the misleading of persons who might misapprehend the power or influence of an actor by relying on the impersonation." Doss,111 Ohio App.3d at 72. The court pointed out the two officers who observed the defendant testified that they were under no such misapprehension and knew that the defendant was not a peace officer but only a security guard provider. Id. The court noted that both officers opined the defendant was merely attempting to beat the speeding ticket for which they had pulled him over. Id. The court quoted a portion of Oliver, which stated:
 {¶ 29} "`Instead, in the case at bar there was no purpose on the defendant's part to make Hartzler [a deputy sheriff] believe that he was a deputy sheriff of Hamilton County. Furthermore, Hartzler by his own testimony was not so misled and never, in fact, believed that Oliver enjoyed that status. Consequently, Hartzler's special expertise and personal knowledge of the defendant's non-official status totally prevented, as a matter of law, the commission of the crime of impersonation with which Oliver is presently charged, from having been committed.'" Doss, 111 Ohio App.3d at 72, quoting Oliver,8 Ohio Misc.2d at 10-11.
 {¶ 30} In both Doss and Oliver, the only people to whom the defendants purportedly represented themselves to be peace officers were police officers. Furthermore, in both cases, the defendants took no affirmative action in asserting themselves as officers. In Doss, the defendant was pulled over for speeding and, upon questioning by the officers, identified himself as a detective. In Oliver, the defendant was in the process of being booked for an unrelated matter when a deputy sheriff ordered the defendant to empty his pockets. The defendant complied and produced a wallet containing an identification card, which identified the defendant as a member of an organization called "International Marshal's Patrol." The defendant, either voluntarily or in response to questioning by the deputy, stated several times that he was a deputy sheriff but that he did not work for a governmental agency. The deputy then filed a charge against the defendant for impersonating a peace officer.
 {¶ 31} The present case is distinguishable from Doss and Oliver
because appellant took affirmative actions to hold himself out as a peace officer. He pulled up to the Elm Street residence in a hurry, as would a police officer responding to an emergency. (Tr. 49). He exited his vehicle waiving a gun around. (Tr. 12, 31). He pointed the gun at the people on the porch while he yelled at them and questioned them about the screams he heard. (Tr. 10, 14, 32). He identified himself as the "police" to the people on the porch. (Tr. 14, 108). He also identified himself as a member of the Youngstown Police Department to the officers. (Tr. 113). Thus, the officers did not "accidentally" come across appellant's impersonation, as did the officers in Doss and Oliver.
 {¶ 32} Although the facts are distinguishable, the question remains whether the court could convict appellant of impersonating a peace officer when no one testified that they believed appellant to be a "real" police officer. Thus, we must determine whether R.C. 2921.51
requires someone to believe that the offender is actually a peace officer in order to be convicted of impersonating a peace officer. In examining the meaning of a statute:
 {¶ 33} "`The court must look to the statute itself to determine legislative intent, and if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged; significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act, and in the absence of any definition of the intended meaning of the words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used.'" Moore v. Strassel (Feb. 26, 1998), 4th Dist. No. 97 CA 32, quoting Wachendorf v. Shaver (1948), 149 Ohio St. 231, paragraph five of the syllabus.
 {¶ 34} As stated above, to impersonate means to "act the part of, assume the identity of, wear the uniform or any part of the uniform of, or display the identification of a particular person or of a member of a class of persons with purpose to make another person believe that the actor is that particular person or is a member of that class of persons." R.C. 2921.51(A)(3). Looking to the plain meaning of the statute, nowhere in this definition is the requirement that someone must believe the impersonation. The statute only requires that the offender act with the purpose to make someone believe he or she is a peace officer. An offender can act with a purpose to make someone believe he or she is an officer without being successful in inducing such belief.
 {¶ 35} The evidence clearly demonstrated that appellant "acted the part of" and "assumed the identity of" a peace officer with the purpose to make the people on the porch believe he was a peace officer. Appellant testified he identified himself as a police officer, both to the people on the porch and to the Youngstown Police Officers. (Tr. 108, 111, 113). Meehan and Valdez testified appellant identified himself as a "police officer" and a "cop." (Tr. 14, 16 35). Furthermore, Valdez testified appellant pulled up to the house at a high rate of speed, stopped abruptly, and jumped out of his car with a gun in his hand. (Tr. 49). Appellant then questioned and tried to reassure the people on the porch by stating, "What's the matter? What's the matter?" and "Okay. The police are here. What's the matter?" (Tr. 107-108). These actions demonstrate appellant acted the part of a peace officer with the purpose to make the people on the porch believe he was a peace officer. Hence, appellant's first two assignments of error are without merit.
 {¶ 36} Appellant's third assignment of error states:
 {¶ 37} "Alternatively, The Trial Court Erred By Failing To Find That Defendant/appellant Had Proved The Affirmative Defense Set Forth In Ohio Revised Code Section 2921.51(F)."
 {¶ 38} Appellant contends that he proved an affirmative defense. It is an affirmative defense to a charge under R.C. 2921.51(B) that the impersonation of the peace officer was for a lawful purpose. R.C.2921.51(F). Appellant points to his testimony that he stopped at the Elm Street house because he heard yelling and thought someone needed help. (Tr. 76). He also points to his testimony that it was late at night and the Elm Street area was known for crime. (Tr. 106). Finally, he points to Officer Pasquale's agreement that he acted reasonably in stopping when he heard yelling and thought someone was in danger. (Tr. 87).
 {¶ 39} The defendant bears the burden of going forward with and of proving an affirmative defense by a preponderance of the evidence. R.C.2901.05(A).
 {¶ 40} Appellant did not demonstrate by a preponderance of the evidence that he impersonated a peace officer for a lawful purpose. While he may have acted with a lawful purpose in stopping to check out what he believed were screams for help, he had no right to waive a gun around and point it at the residents on the porch and to represent himself as the police. Furthermore, appellant testified he told the police officers that he was a Youngstown Police Officer with all of the authority they had. There was no lawful purpose for representing himself this way to the officers. Thus, appellant did not prove his affirmative defense by a preponderance of the evidence. Accordingly, appellant's third assignment of error is without merit.
 {¶ 41} For the reasons stated above, the trial court's decision is hereby affirmed.
Waite and DeGenaro, JJ., concur.