OPINION AND JUDGMENT ENTRY
This is an appeal from an October 29, 1998 judgment of the Williams County Court of Common Pleas in which the trial court, on remand from this court, see Steusloff v.Steusloff (June 5, 1998), Williams App. No. WM-97-033, gave greater specificity to explain how it applied the factors in R.C.3105.171 to make a property division and to explain how it applied the factors in R.C. 3105.18 to determine spousal support in this case. Appellant, Daniel R. Steusloff, is again appealing to this court. He has presented two assignments of error that read:
 "I. THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING SPOUSAL SUPPORT TO APPELLEE.
 "II. THE TRIAL COURT COMMITTED ERROR BY NOT COMPLETELY OR EQUITABLY DIVIDING THE PARTIES' MARITAL PROPERTY AS REQUIRED BY REVISED CODE, SECTION 3105.171."
Appellee, Laura Steusloff, says there is no merit to either assignment of error. Before considering the arguments in support of and in opposition to the assignments of error, we will review the facts and procedure in this case.
The trial court granted a divorce to appellant and appellee on December 5, 1997. The court also made orders regarding property division and spousal support on that date. Appellant challenged the property division and spousal support orders in this court. Because we found the trial court's judgment lacked sufficient specificity for us to make a meaningful review of its orders, we reversed and remanded. Id.
On remand, the trial court invited both parties to submit new findings of fact and conclusions of law "directly addressing the questions raised by the Court of Appeals for Williams County." Both parties submitted the requested findings of fact and conclusions of law.[1]
On November 24, 1998, the trial court held a hearing for the express purpose of allowing appellant to explain why the findings of fact and conclusions of law proposed by appellee should not be adopted. Appellant protested that several of the findings were not supported by the record or were not equitable. Appellee responded that appellant should not be permitted to relitigate the case on remand.
On August 21, 1998, the trial court adopted appellee's proposed findings of fact and conclusions of law and ordered appellee's counsel to prepare a judgment entry. On October 29, 1998, the judgment entry was journalized. Appellant then brought this appeal.
In support of his first assignment of error, appellant argues that it was an abuse of discretion for the court to order him to pay appellee $200 per month for thirty-six months as spousal support. He argues that: 1) appellee is capable of working; 2) their marital standard of living was low, as they subsisted primarily on his income of $25,000 or less per year; 3) appellee can and should improve her standard of living by seeking child support from the father of her children; 4) there are no children born of this marriage; 5) appellee is still young enough to go to work and acquire a pension on her own, since she is approximately thirty-eight years old; 6) there is no evidence to support a finding that appellant has a vested retirement or pension plan, so neither party should be considered as participants in a retirement or pension plan; appellee was able to meet her expenses by "saving money" from her child support checks and asking her family members for help; and 7) the trial court considered some irrelevant information, i.e. that appellee has two children (not from this marriage) to raise. Appellant says he is not the natural or adopted father of appellee's children and he should not be held responsible for their support. He says there is no evidence to show that appellee needs any spousal support. Finally, he argues that "given the level of marital debt, as well as his own modest, current needs, it appears that Appellant would be unable to meet such a spousal support obligation."
Appellee responds that the facts in this case show she has an economic need for spousal support. She has limited employment experience and has been unable to work due to depression. She is unable to support herself because of her medical condition, her limited income and the expenses of her children's medication. In contrast, appellant has steadily earned an income of $23,500 or more, and was living with his girlfriend at the time of the final divorce hearing. Finally, appellee says "having children in the home is relevant under Ohio Revised Code Section 3105.18(C)(1)(f) and (n). Therefore the Court's consideration of the expenses a party is required to incur to raise their children whether they are children of the marriage or not, is appropriate in considering a spousal support award."
R.C. 3105.18(B) provides that a trial court may award reasonable spousal support to either party in a divorce following the division or disbursement of property. Furthermore, a trial court's order relating to spousal support will only be reversed on appeal if the appellant can show that the trial court abused its discretion. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 24. An abuse of discretion exists when the court's attitude is unreasonable, arbitrary or unconscionable. Booth v. Booth (1989),44 Ohio St.3d 142, 144. The trial court must consider the factors listed in R.C. 3105.18(B)[2] before entering an order for spousal support and must "not base its determination upon any one of these factors taken in isolation." Kaechele v. Kaechele (1988),35 Ohio St.3d 93, 96.
The trial court made the following pertinent findings of fact and conclusions of law:
 "1. The parties hereto were married on July 25, 1986, and had been married for ten years and eleven months at the date of the final hearing hereof.
 "2. As of the date of the hearing herein, the Plaintiff was unemployed having been taken off work by her physician for treatment of her depression. Her previous employment had been at Trine in West Unity and she had been making $5.75 per hour. She also had done some babysitting. At the time of the final hearing, the Plaintiff was receiving SSI payments of $221.00 per month and was receiving sporadic child supports [sic] payments. The Plaintiff is responsible for raising a son who is seventeen years old and has been diagnosed as having attention deficit hyperactivity disorder as well as a daughter who is thirteen. The Plaintiff's living expenses exceeded her income by $150.00 to $200.00 per month at the time of the final hearing.
 "3. The Defendant is employed at Bryan Custom Plastics. He makes a gross wage in excess of $23,500 per year. In addition, he has contributions taken out of his paycheck for a 401K Plan. He was living in his girlfriend's residence at the time of the final hearing.
"***
 "It is therefore ORDERED, ADJUDGED AND DECREED as follows:
"***
 "3. After due and proper consideration of all of the factors contained in Section 3105.18 of the Ohio Revised Code specifically:
 "a. The fact that the Plaintiff is unemployed, has a sporadic work history at best, has limited training, and a limited employment history, that she is receiving SSI payments of $221.00 per month and sporadic child support payments as well as some limited babysitting income, that the Defendant is employed at Bryan Custom Plastics and has been employed there for an extended period of time and that he makes a gross wage in excess of $23,500.00 per year;
 "b. That the Defendant has a much greater relative earning ability than the Plaintiff and can be expected to continue to have a much greater relative earning ability into the indefinite future;
 "c. The Plaintiff was 37 and the Defendant 38 at the final hearing date and the only evidence regarding the physical, mental and emotional condition of the parties was that the Plaintiff suffers from depression to such a significant extent that her doctor has refused to permit her to work and she requires medication to treat that condition;
 "d. The Defendant is a participant in a retirement plan. The Plaintiff is not.
 "e. The parties have, according to their testimony, been married for ten years and eleven months as of the date of the final hearing hereof and had lived together for some period of time prior to that;
 "f. The Plaintiff does have minor children in her home for whom she is the custodian, the Defendant does not;
 "g. The parties had established a modest standard of living consistent with a combined income in the neighborhood of $23,000.00 to $24,000.00 per year. Without substantial spousal support, the standard of living of the Plaintiff will go down significantly upon the parties' divorce;
 "h. There was no testimony presented regarding the education of the parties;
 "i. The parties will, pursuant to this judgment entry, come out of the marital relationship with relatively equal assets and liabilities;
 "j. Neither party has contributed significantly to the education of the other, however, the Plaintiff did maintain a home while the Defendant acquired many years of work experience which has led to his significantly greater earning ability;
 "k. There was no testimony presented which would permit the Court to make any findings regarding the time and expense necessary for either spouse to acquire additional education or training, nor of the tax consequences of a spousal support award;
 "1. While the Defendant was employed continuously throughout the marriage, the Plaintiff stayed at home most of the time, keeping the marital home as well as devoting some time to the care of the Defendant's child by a previous marriage and these marital responsibilities prevented her from producing income or acquiring substantial job training or employment history which has further limited her ability to be gainfully employed at a rate equal to the Defendant's. [sic]
 "the Court finds that and hereby orders the Defendant should pay spousal support to the Plaintiff in the amount of $200.00 per month for a term of three years from the date of the entry of divorce herein and the costs of this action."
While we agree with appellant that appellee's responsibility to raise her own children who were not born to this marriage should not have been considered by the trial court in this case, we cannot find that the trial court abused its discretion when it ordered appellant to pay $200 per month for thirty-six months. When all of the other pertinent factors are considered, including appellee's health, limited earning ability, lack of participation in any retirement plan, the length of the marriage, and appellant's steady employment history, the trial court's order for temporary spousal support is not arbitrary, capricious, unreasonable or contrary to law. Appellant's first assignment of error is not well-taken.
In support of his second assignment of error, appellant argues that the trial court did not equitably divide the parties' marital property as required by R.C. 3105.171. Specifically, he says the court wrongly assigned some debt to him as non-marital debt, and failed to address more than $8,000 of debt in the final judgment.
Appellant says a Primestar bill for $430 was not a marital debt. He says it was accrued after he had moved from the marital residence, and he should not be ordered to pay that expense. Appellant also lists: 1) a GTE phone bill in excess of $548, (he testified that $348 of that amount was added to the bill after he moved from the marital residence and the majority of calls were to West Virginia, the home state of the man who moved in with his wife after he left); 2) a debt of $4,500 for the parties' Chrysler LeBaron; and 3) medical bills of $3,000 (half of which are for medical treatment of appellee and her children). Appellant says he should have received consideration for absorbing the debt associated with appellee's children's medical bills, but the court gave him no credit for those payments when allocating the parties' assets and debts. Appellant complains that the trial court apparently chose to accept appellee's testimony about the value of marital assets, even though she testified that appellant took care of all of the parties' bills during their marriage. Appellant also complains there is no computation included in the trial court's judgment entry to show how values were assigned to certain property.
For instance, appellant says: "Mr. Steusloff testified that the parties' Chrysler LeBaron was purchased for $7,000, and that the parties still owe approximately $4,500 on the car. (Trial transcript, Page 98, lines 13-24). The Court's Judgment Entry of October 29, 1998 assigned a value of $8,000 for the same vehicle. There is no evidence in the record to support or account for that value."
Appellant says the trial court never accounted for $2,500 in equity on a Pontiac automobile that was in appellee's possession. Appellant does not quibble with appellee's testimony that she traded the Pontiac in on another vehicle, but says since the fair market value of the Pontiac was $6,500 to $7,000 and the debt owed on the car by the parties was only $4,000, appellee should be credited with $2,500 in equity.
Appellant also cites the trial court's finding that he owns a Dodge truck. He says he testified that he never owned a Dodge truck and appellee did not dispute his testimony. He says since he does not and never did own a Dodge truck, the trial court's finding that the truck is worth $250 is clearly erroneous and is an abuse of discretion.
Finally, appellant says the trial court abused its discretion when it found he was in possession of several all terrain vehicles ("ATVs"). He says the testimony at the hearing showed that one ATV was traded for a hot water heater he installed in the marital residence, a second ATV was repossessed by the bank, and the third ATV was held by a repair shop because of an artisan's lien for $640.
Appellant concludes:
 "Appellant respectfully submits that these findings are prima facie evidence that the trial court acted arbitrarily and capriciously in dividing the parties's assets and liabilities. If Appellant had the assets as listed, and if those assets truly had the values the trial court assigned to them, it is not likely that Appellant would prosecute an appeal of the property division. Appellant further submits that the evidence presented concerning the phantom Dodge Truck, the value of the Dodge LeBaron, and the value of the ATVs is no more substantial than the evidence the trial court disallowed when considering the parties' liabilities to Primestar, Beneficial, Internal Revenue Service, medical bills, and phone bills."
Appellee responds that the trial court did not abuse its discretion when it divided the marital property of the parties. Appellee says the trial court individually listed each item of property and its value, and individually listed each debt owed by the parties. Appellee says the trial court heard conflicting testimony from the parties regarding what property they owned, the value of the property, and who incurred debts owed. Appellee says that the trial court had to decide which testimony was more credible. In addition, appellee says appellant did testify about paying medical bills for appellee's children, but he never submitted any proof that he actually received or paid the bills. She says appellant did not provide the trial court with any proof of other debts he claimed he paid while the divorce proceedings were pending.
As this court noted previously:
 "An appellate court will not reverse a trial court's property division order in a divorce proceeding unless the trial court abused its discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. An abuse of discretion `connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219 quoting State v. Adams (1980), 62 Ohio St.2d 151, 157." Steusloff v. Steusloff (June 5, 1998), Williams App. No. WM-97-033, unreported.
When this case was previously presented on appeal, we said:
 "The trial transcript and the exhibits admitted at the divorce hearing in this case show that appellant did give unrefuted testimony regarding some outstanding debts. The judgment entry of the trial court in which the property division orders are contained has no reference to several of these debts. In addition, this court is unable to determine how the court arrived at the total values assigned to the property distributed to appellant and to appellee." Id.
On remand, the trial court did change its judgment entry to give more specificity regarding the property division.
The judgment entry now contains the following pertinent paragraphs:
"FINDINGS OF FACT
"***
 "4. The real estate owned by the parties has been deeded back to The Conti Mortgage Company in exchange for a satisfaction of the indebtedness of the parties therefore the parties have no equity in that real property and no further liability for any mortgages on that real property.
 "5. The Plaintiff is in possession of the following items of personal property which the court finds have the value set forth in the opposite column:
Bed $100.00
Dresser 0
Couch, chair and two end tables 250.00
27 inch tv with stereo 200.00
Sauder entertainment center 100.00
VCR 79.00
Sweeper 20.00
Wn.er and Dryer that don't work 20.00
Microwave 100.00
Air Conditioner 100.00
Lawn Mower 100.00
 Two children's Bikes and children's beds no marital value
Proceeds of 19" tv sold by
Plaintiff 50.00
These items have a total value of $1,019.00.
 "6. The Defendant is in possession of the following items of personal property which the Court finds gave the value set forth in the opposite column:
Dresser 50.00
Personal belongings no marital value
VCR 100.00
Tools and toolboxes 1500.00
Sweeper 20.00
Bikes 100.00
Riding mower 250.00
Chain saw 300.00
Car parts — 0 —
Camaro 800.00
Honda motorcycle 1000.00
Couch 100.00
Lamp 15.00
Sewing machine — 0 —
Air conditioner 100.00
Toyota 500.00
Van 800.00
Trailer 250.00
Twin bed 75.00
Dodge Truck 250.00
Dodge LeBaron 3500.00 net value ($8000.00
value minus $4500.00 debt)
ATVs or proceeds thereof 3000.00
These items have a total value of $12,710.00.
 "7. The Plaintiff complied with all of the requirements of the Judgment Entry filed herein on July 11, 1997. The Defendant failed to comply with the requirements of the Judgment Entry. He attempted to make repairs to the 1991 Pontiac but those repairs were incomplete. The Plaintiff presented the Defendant with a repair bill of $119.00 for the remainder of the repairs needed on that car and the Defendant refused to pay the same. The Plaintiff therefore took the 1991 Pontiac back to One Stop Auto and traded it in on a different automobile of lesser value so that she could have reliable transportation.
 "8. The parties had outstanding indebtedness to Sears ($1380.00), Toledo Edison ($1083.00), GTE ($505.00) and Ohio Gas Company ($117.43). In addition, while Laura was living in the marital residence she was required to make plumbing and heating repairs on the residence in the amount of $562.83 for which she has received no reimbursement.
 "While counsel for Defendant in his opening statement argued that certain other debts in the Defendant's name were marital obligations, the Defendant submitted insufficient evidence regarding these alleged debts to Beneficial, Primestar, Internal Revenue Service, medical bills and telephone bills for the Court to be able to determine the nature and extent of these debts nor the manner in which they were incurred and thus the Court cannot and does not find that those are marital debts. The debt on the house and Pontiac have been extinguished and the debt on the LeBaron is to be paid by the Defendant and the amount of that debt has been deducted from its value in the property settlement outlined in paragraph 6 above.
 "It is therefore ORDERED, ADJUDGED AND DECREED as follows:
"***
 "2. After due and proper consideration of all of the factors set forth in Section 3105.171 of the Ohio Revised Code, the Court finds and hereby orders that the Defendant should pay the debts set forth in paragraph 8 of the Findings of Fact. The Court finds that after payment of said debts, the Defendant will have been awarded herein assets having a total net value of $9,624.57. The Court finds that the Plaintiff will have assets with a net value of $1,019.00. Therefore, the Court finds that the Defendant should pay to the Plaintiff the sum of $4,302.79 to equalize the property distribution. Further, the Court finds that the Defendant should pay to the Plaintiff the sum of $281.42 to reimburse her for one-half of the repairs that she was required to make to the marital residence."
This court has previously noted that while a finder of fact is vested with the power to decide the credibility of witnesses, a finder of fact must accept unrefuted testimony as true unless there are objective reasons that appear in the record to show that a reasonable basis existed to support the fact finder's determination that the testimony was not credible. Wamerv. Pfaff (Mar. 31, 1998), Lucas App. No. L-97-1234, unreported (citing State v. Brown (1983), 5 Ohio St.3d 133; Bailey v. EmilioC. Chu, M.D., Inc. (1992), 80 Ohio App.3d 627, State v. Nivert
(Oct. 18, 1995), Summit App. Nos. 16806, 16843, unreported; andMuncy v. Jones, (Jan. 19, 1984), Franklin App. No. 83AP-562, unreported.) We have again carefully reviewed this record, and find that for some of the debts referred to by appellant, there is no objective reason in the record to support a finding that his unrefuted testimony was not credible.
For instance, appellant testified that $348 was added to the amount owed on the GTE phone bill from the marital residence after he left, and that most of the calls made were to West Virginia, the home state of the man who moved in with his wife after he left. Appellee did not refute that testimony, and there is no objective reason in the record to show that appellant's testimony was not credible.
Appellant testified that because his wife filed her tax return separately, rather than as married filing jointly, he incurred a tax liability of over a $1,000, while she received a refund of $990. He testified that if they filed an amended tax return, they would still receive a refund and he would have no liability. Appellee did not refute that testimony. At the close of the hearing, the trial court made an oral order that the parties were to file an amended tax return, yet in the judgment entry prepared and adopted following the remand from this court, the trial court said appellant presented insufficient evidence to show the Internal Revenue Service debt was a marital debt.
Appellant testified that he was paying medical bills in excess of $3,000 and that at least half of those bills were for medical care given to appellant and her children. He testified that his wages were being garnished because of those debts. Appellee did not refute that testimony, and no objective reason is shown in the record to support a finding that appellant's testimony was not credible.
The same is true regarding appellant's testimony that he did not own a Dodge truck. He testified that he did not own a Dodge truck at the time of the hearing and that he never had owned a Dodge truck. He said he had owned a Chevrolet truck, but he sold it for $1,000 and used the money to make repairs to the marital residence.
We also agree that there is no objective reason shown in the record to support the trial court's finding that the Chrysler LeBaron was worth $8,000. Appellant testified he bought the car for $7,000 and that he still owed $4,500 on the loan. He said his daughter had the car and was assuming the payments. Appellee did not refute the testimony. Indeed, appellee testified that appellant had paid all the bills during the marriage and whatever he said about the bills would be correct.
Likewise, appellant's complaint that the trial court never accounted for $2,500 in equity in the Pontiac appellee traded in during the pendency of the divorce is well-founded. Appellee never refuted that the equity did exist in the car when she traded it in for a more reliable vehicle.
Appellant presented unrefuted testimony about the ATV's. He testified that he traded one in for a hot water heater that he installed in the marital residence. The second ATV was repossessed by the bank, and a third ATV was held by a repair shop because of an artisan's lien. No objective reason is shown in the record to support a finding that his testimony was not credible, yet the trial court listed these ATVs as property awarded to him (or proceeds thereof) and assigned a total value of $3,000.
There was some conflicting testimony about the Primestar bill. Appellant testified the whole amount of $430 was charged after he left the marital residence. Appellee testified that appellant gave the combination for the satellite to his eighteen year old daughter, and that his daughter ran the charges up while she was living with appellee for approximately three weeks. Appellant said his daughter only lived there for eight days after he left, and that she went to school and worked, so she was not home long enough to watch that many movies. While we might be inclined to believe appellant, the trial court as the trier of fact was free to believe appellee rather than appellant. Accordingly, there are objective reasons in the record that could support the trial court's finding that the Primestar bill is appellant's responsibility to pay.
Because there is merit to appellant's complaint that the trial court abused its discretion when it made the property division in this case, we find his second assignment of error well-taken. The judgment of the Williams County Court of Common Pleas is affirmed in part and reversed in part. This case is again remanded to the trial court for further proceedings so that the trial court can make a fair and equitable property division that includes allocations of property and debt that are supported by the record. Appellant and appellee are each ordered to pay one-half of the court costs of this appeal.
AFFIRMED IN PART AND REVERSED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J.
 Melvin L. Resnick, J.
 Richard W. Knepper, J.
CONCUR.
[1] While the civil procedure rules do permit a trial court to order one or both parties to prepare proposed findings of fact and conclusions of law, see Civ.R. 52, a better course of action in a case such as this would be for the court to prepare a complete proposed ruling and then permit the parties to raise any objections to that ruling before it is entered in final form.
[2] R.C. 3105.18(C) provides:
 "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
"(b) The relative earning abilities of the parties;
 "(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
 "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 "(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of education of the parties;
 "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 "(l) The tax consequences, for each party, of an award of spousal support;
 "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 "(n) Any other factor that the court expressly finds to be relevant and equitable."