BAILEY et al., Appellants and Cross–Appellees,

v.

EMILIO C. CHU, M.D., INC., et al., Appellees and Cross–Appellants.

[Cite as *Bailey v. Emilio C. Chu, M.D., Inc.* (1992), 80 Ohio App.3d 627.]

Court of Appeals of Ohio,
Summit County.

Nos. 15085, 15089.

Decided Jan. 15, 1992.

628

George Pappas and Dennis J. Bartek, for appellants and cross-appellees.

Tobias J. Hirshman, Janis L. Small and Daniel S. Cody, for appellees and cross-appellants.

REECE, Judge.

This appeal arises from a medical malpractice action brought by the plaintiff, Robert R. Bailey, against the defendant, Emilio C. Chu, M.D.[1] Robert's wife, Shielia J. Bailey, also a plaintiff in this lawsuit, claims a loss of Robert's consortium as a result of Dr. Chu's negligence.

Robert has a history of medical problems both physical and psychological in nature. In 1980, he was diagnosed as diabetic; his diabetes was initially controlled by a combination of diet and oral medication. By 1986, Robert's diabetes had worsened, requiring daily injections of insulin. In October 1984, Robert attempted suicide by ingesting an overdose of prescription medication. As a result of his attempted suicide, Robert was hospitalized and diagnosed as suffering from severe depression. The medical records indicate that he attributed his depression, at least in part, to marital problems he was having with his wife. Sometime during 1985, Robert began experiencing problems of impotency. This condition placed additional strains on his marriage, with Shielia wanting him to seek medical attention for his impotency, while Robert was reluctant to discuss his problem.

By the later part of 1988, Robert's condition was unchanged and it had been over three years since he and Shielia had engaged in any sexual relations.

---

1. Emilio C. Chu, M.D., Inc. is also named as a defendant in this action. The liability of the corporation is predicated on whether Dr. Chu, individually, was negligent in his treatment of Robert Bailey.

Robert finally discussed his condition with his family physician, who referred him to Dr. Chu, a urologist. Robert met with Dr. Chu twice during the month of December 1988. Dr. Chu diagnosed Robert as permanently, organically impotent. A decision was made to surgically implant a penile prosthesis to enable Robert to resume sexual intercourse. This surgery was performed by Dr. Chu on December 21, 1988 at Barberton Citizens' Hospital.

During the month following surgery, Robert returned to the hospital twice, complaining of intense pain in his genitals. He was also suffering from urinary retention, which resulted in urinary incontinence when the bladder became full and over-distended. Because of the urinary retention, Robert was taught to self-catheterize himself in order to void urine from his bladder. The last time Dr. Chu saw Robert as a patient was at the doctor's office on January 24, 1989. At that meeting, Robert claims Dr. Chu advised him that he would have to catheterize himself for the rest of his life. Dr. Chu denies making any such statement, contending that Robert was to return to his office in two weeks for further evaluation. In any case, Robert was noticeably upset at the conclusion of this meeting and "stormed out" of Dr. Chu's office.

On January 26, 1989, Robert's fifty-seventh birthday, he expressed to Shielia a desire to commit suicide and made an attempt to asphyxiate himself by inhaling carbon monoxide. Shielia summoned the police and ultimately Robert was admitted to St. Thomas Hospital. Because of his continued complaints of genital pain, Dr. Fuerst, a urologist, was called to examine Robert. In his initial examination, Dr. Fuerst noted that Robert's scrotum was enlarged and that urine was expressed when pressure was applied to the scrotum. Dr. Fuerst suspected that the wall of the urethra was lacerated, causing urine to enter the surrounding body tissue and accumulate in the scrotum. This in turn was irritating the body tissue and causing the intense pain Robert was experiencing. This diagnosis was confirmed by x-rays showing a laceration in the urethra. On January 29, 1989, Dr. Fuerst performed surgery to remove the penile implant and repair the laceration. Since that time, Dr. Fuerst has performed three separate operations to correct problems associated with the accumulation of scar tissue in the urethra.

Robert contends that Dr. Chu was negligent in several respects. He claims that Dr. Chu breached the requisite standard of care in failing to ascertain whether he was permanently, organically impotent prior to proceeding with the penile implant. He argues that his impotency could have been cured without resort to a penile implant, which, by the very nature of the procedure, has left him irreversibly, organically impotent. Robert also claims that Dr. Chu was negligent in causing and failing to detect the laceration to his

urethra during the implant surgery, and by failing to timely diagnose the complications caused by the laceration.

The jury found for Robert, awarding damages of $300,000, but made no award to Shielia on her loss-of-consortium claim. From this judgment Shielia appeals, raising two assignments of error. Dr. Chu filed four cross-assignments of error.

### Shielia J. Bailey's Assignment of Error I

"The verdict in favor of the defendants Emilio C. Chu, M.D., Inc., and Emilio C. Chu, individually, and against plaintiff Shielia J. Bailey must be reversed since Shielia J. Bailey's consortium claim was derivative from the claims of plaintiff Robert R. Bailey and it was undisputed that Dr. Chu's negligence proximately caused injuries to Robert R. Bailey."

Pursuant to Civ.R. 49(B), the trial court, at the request of Dr. Chu, submitted written interrogatories to the jury. The jury was instructed to answer Interrogatory No. 5 only if it found that Dr. Chu had breached the required standard of care in his treatment of Robert. Interrogatory No. 5 states in part:

" * * * have the plaintiffs proven by a preponderance of the evidence that a negligent act or omission of Emilio C. Chu, M.D. was a *proximate cause of injury* to plaintiff Shielia Bailey." (Emphasis added.)

■ Shielia argues that this interrogatory is a misstatement of the law. While conceding that the jury was free to find that she suffered no damages, *Smith v. Franzman* (Apr. 4, 1984), Summit App. No. 11210, unreported, 1984 WL 6101, Shielia contends the jury was erroneously led to examine whether Dr. Chu's negligence was a proximate cause of her loss of Robert's consortium.

"A wife has a cause of action for damages for the loss of the consortium of her husband against a person who negligently injures her husband, *which injuries deprive* her of the consortium of her husband." (Emphasis added; citation omitted.) *Clouston v. Remlinger Oldsmobile Cadillac, Inc.* (1970), 22 Ohio St.2d 65, 51 O.O.2d 96, 258 N.E.2d 230, paragraph two of the syllabus.

The loss of consortium must, therefore, *result* from the injuries inflicted by the tortfeasor, not from some other source. While we agree that the interrogatory may be questionable, it is not a basis for reversal.

■ When a party challenges specific portions of the trial court's instructions, including jury interrogatories, an appellate court will review the instructions as a whole. *Frank v. Vulcan Materials Co.* (1988), 55 Ohio App.3d 153, 154, 563 N.E.2d 339, 340. See, also, *Wagenheim v. Alexander Grant & Co.*

(1983), 19 Ohio App.3d 7, 16, 19 OBR 71, 81, 482 N.E.2d 955, 966. In the present case, the trial court gave the following instruction to the jury:

" * * * If you find for the plaintiff, Robert Bailey, you will also consider and you may include a separate amount that will reasonably compensate the wife for her damages which you find resulted from a loss of consortium.

"Consortium consists of services, sexual relations, companionship, comfort, solace, and love of the other spouse."

■ Unlike the jury interrogatory, this instruction is a correct statement of the law as it pertains to a loss of consortium claim. *Clouston, supra.* The jury was instructed to determine whether Shielia suffered any direct injury in her relationship with Robert, concomitant with any injury Robert suffered as a result of Dr. Chu's negligence. In view of this jury instruction, we find that Shielia was not prejudiced by the questionable jury interrogatory.

Shielia's first assignment of error is overruled.

### Shielia J. Bailey's Assignment of Error II

"The verdict in favor of the defendants Emilio C. Chu, M.D., Inc., and Emilio C. Chu, individually, and against plaintiff Shielia J. Bailey was against the manifest weight of the evidence for the reason that the uncontroverted and unrebutted testimony clearly established proximate cause, contrary to the jury's findings."

■ At trial, evidence was elicited that Shielia and Robert had a history of marital problems and had not engaged in sexual relations since 1985. The evidence showed that while Robert suffered a month of incapacity following Dr. Chu's surgery, he quickly improved after Dr. Fuerst removed the penile implant and repaired the laceration in his urethra. In her own testimony, Shielia admitted that in February 1989, less than two months after the implant surgery, Robert was able to resume regular social activities. Based on this evidence, the jury could reasonably conclude that there was no appreciable change in the relationship of Robert and Shielia as a direct result of Robert's injuries. See *Clouston, supra.* Applying the proper standard of review, we find there was sufficient, credible evidence supporting the jury's determination that Shielia had suffered no damages. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus; *Chem. Bank of New York v. Neman* (1990), 52 Ohio St.3d 204, 207–208, 556 N.E.2d 490, 494. Accordingly, Shielia's second assignment of error is overruled.

Dr. Chu's Cross–Assignments of Error I and II

"I. The trial court erred in failing to grant a directed verdict when the undisputed expert testimony established that Mr. Bailey's impotence preceded Dr. Chu's surgery.

"II. The trial [court] committed reversible error when it failed to grant defendants' motion for a new trial to rectify its erroneous rulings on defendants' motion for a directed verdict."

To prevail in a medical malpractice action, the plaintiff must prove, by a preponderance of the evidence, not only that the defendant failed to act in accordance with the requisite standard of care, but that this failure was a proximate cause of the resulting injury. *Kuhn v. Banker* (1938), 133 Ohio St. 304, 310, 10 O.O. 373, 375, 13 N.E.2d 242, 244; *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, paragraphs one and two of the syllabus.

In addressing the issue of proximate cause, the Ohio Supreme Court has stated that a "plaintiff in a malpractice case must prove that defendant's negligence, *in probability,* proximately caused [the injury]." (Emphasis *sic.*) *Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St.2d 242, 252, 56 O.O.2d 146, 151, 272 N.E.2d 97, 103. The court went on to define probability as "that which is more likely than not." (Citations omitted.) *Id.* at 253, 56 O.O.2d at 152, 272 N.E.2d at 104. Therefore, it is not enough for the plaintiff to merely prove the physician was negligent, but he or she must also prove by a preponderance of the evidence that the injury complained of was a direct result of that negligence. Additionally, it is well settled in medical malpractice cases that expert medical testimony is necessary to establish the causal connection between the negligence and the injury, whenever this relationship is beyond the common knowledge and understanding of the jury. *Darnell v. Eastman* (1970), 23 Ohio St.2d 13, 17, 52 O.O.2d 76, 78, 261 N.E.2d 114, 116; *Cooper, supra,* 27 Ohio St.2d at 253, 56 O.O.2d at 152, 272 N.E.2d at 104.

In the present case, there was ample evidence that Dr. Chu breached the requisite standard of care in proceeding with the implant surgery. Dr. Chu failed to conduct the necessary pre-operative examinations in reaching his diagnosis that Robert was irreversibly impotent. While not denying his negligence, Dr. Chu contends that Robert failed to establish, through expert testimony, that his negligence proximately caused the permanent, organic impotency Robert claims he has suffered as a result of the implant surgery. Dr. Chu points out that Robert has the burden to prove, by a preponderance of the evidence, that his permanent impotence was proximately caused by Dr.

Chu's negligence. This requires Robert to prove that his pre-operative impotence was "more likely than not" reversible and not permanent. In support of his position, Dr. Chu relies heavily on two portions of testimony. First, on cross-examination, Dr. Fuerst, plaintiffs' medical expert, testified as follows:

"By Mr. Hirshman [for Dr. Chu]:

"Q. Am I correct in understanding that you hold no opinion as to whether or not Mr. Bailey was organically and irreversibly impotent prior to Dr. Chu's surgery?

"A. That's correct. I don't have enough information to tell me.

"Q. Okay. Therefore, you can't say one way or another whether it is Dr. Chu's surgery that's made him organically and irreversibly impotent or whether he was already organically and irreversibly impotent before he saw Dr. Chu, correct?

"A. If he wasn't before he saw Dr. Chu, he is now, so.

"Q. Correct?

"A. Yeah.

"Q. I will accept that, okay. For the sake of argument, I will accept that.

"But, nevertheless, you can't tell me whether or not it was Dr. Chu's surgery that caused him to become irreversibly and organically impotent?

"A. Again, the surgery has caused that to happen. Whether he was before that or not, no, I don't know that.

"Q. We all agree with this much, then, to the extent that he was beforehand, in other words, you have no opinion as to whether or not he was in fact organically impotent beforehand and irreversibly impotent beforehand, correct?

"A. That is correct, yes."

Dr. Chu also points to the testimony of his own expert urologist. This witness testified that, in his expert opinion, Robert was permanently impotent prior to the surgery. Based on the testimony of these two experts, Dr. Chu argues that it was error for the trial court to deny his motions for directed verdict both at the close of the plaintiffs' evidence and at the close of his defense.

█ We find Dr. Chu's reliance on these limited excerpts from five days of trial testimony to be misplaced. While in malpractice cases complex issues of proximate cause require the use of expert testimony, this does not require each expert to venture an opinion on the ultimate issues to be decided by the trier of fact. Simply because Dr. Fuerst would not conjecture whether Robert

was or was not permanently impotent prior to the surgery does not require the trial court to arrest the remaining evidence from the jury. Dr. Chu overlooks the fact that the jury, as the trier of fact, is the "sole weigher of credibility and testimony," including expert witnesses. *McKay Mach. Co. v. Rodman* (1967), 11 Ohio St.2d 77, 82, 40 O.O.2d 87, 90, 228 N.E.2d 304, 308. While Evid.R. 704 permits opinion testimony, even though it "embraces an ultimate issue to be decided by the trier of fact," the trier of fact is under no obligation to accept as true the opinion of an expert witness. *In re Estate of Seelig* (1981), 2 Ohio App.3d 223, 224, 2 OBR 243, 244, 441 N.E.2d 598, 599.

██ Whether a directed verdict, as to the issue of proximate cause, should be granted depends on the totality of the medical testimony given by the expert witnesses and any reasonable inferences that may be drawn therefrom. It has been stated that "[a] directed verdict may properly be granted on the issue of proximate cause, but only if there is *no* evidence adduced which would give rise to a *reasonable inference* that the negligent acts of defendants were a proximate cause of plaintiff's injury." (Emphasis added.) *White v. Moody* (1985), 24 Ohio App.3d 176, 179, 24 OBR 266, 269, 493 N.E.2d 1006, 1010, citing *Kuhn, supra,* at paragraph two of the syllabus; *Cooper, supra,* 27 Ohio St.2d at 250, 56 O.O.2d at 150, 272 N.E.2d at 102. It would be reversible error to withhold the decision from the jury when, viewing the evidence most favorably for the plaintiff, he has presented a " 'chain of circumstances and events from which an inference may reasonably arise that the physician was negligent and that such negligence was the proximate cause of [the injury].' " (Emphasis deleted.) *Shapiro v. Burkons* (1978), 62 Ohio App.2d 73, 78, 16 O.O.3d 175, 178, 404 N.E.2d 778, 781, quoting *Morgan v. Sheppard* (1963), 91 Ohio Law Abs. 579, 589, 188 N.E.2d 808, 814.

██ In the present case, there was sufficient evidence from which the jury could conclude that "it was more likely than not" that Robert was not permanently, organically impotent prior to the implant surgery. Expert testimony was elicited that diabetics frequently suffer transient impotency as a result of their diabetes. This temporary impotency can often be cured by controlling the diabetes through a combination of insulin and proper diet. The report of the intake nurse at Barberton Citizens' Hospital indicated that Robert "cheats often" on his diet, a report which Dr. Chu admitted he never read prior to proceeding with the implant surgery. Additionally, testimony was given that Dr. Chu was aware that Robert was taking seventy-two units of insulin per day. Even though this level of insulin may indicate a physician's attempt to bring a patient's diabetes under control, Dr. Chu never consulted Robert's family physician to ascertain the status of Robert's diabetes. The jury also heard testimony that Robert's impotency developed concur-

rently with the worsening of his diabetes. His impotency developed in 1985 and shortly thereafter he had to begin insulin injections. From this expert testimony, the jury could reasonably infer that Robert's impotency was more probably due to a failure to control his diabetes.

The jury also received expert testimony about the psychological causes of impotency. Testimony was given that impotency may be caused by "performance anxiety," in which a person's fears that he will not perform sexually become self-realized. This anxiety is aggravated when additional pressure is placed on the person by his sexual partner, which according to the testimony Shielia did in the instant case. The jury was also told that Robert, suffering from severe depression, attempted suicide in 1984, and thereafter began experiencing his impotency. The close proximity in time between the suicide attempt and the appearance of his impotency may be indicative of a psychological basis for the impotency.

At Robert's first appointment with Dr. Chu, he was given a "snap gauge," which is a device that measures any penile erections occurring during sleep. This device assists in diagnosing the cause of a person's impotency. If the impotency is psychologically based, then erection occurring during sleep will progressively break the three measuring bands on the device. Robert used this device one night, breaking one of the bands.

From the foregoing, we find there was sufficient evidence presented from which the jury could reasonably find that it was "more likely than not" that Robert was not permanently, organically impotent prior to the implant surgery. Therefore, in light of the applicable standard, it was not error for the trial court to deny Dr. Chu's motions for a directed verdict. See *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 178, 423 N.E.2d 467, 469; see Civ.R. 50(A). If the trial court committed no error in denying Dr. Chu's motions for directed verdict, then there was no basis for granting a new trial.

Dr. Chu's first and second cross-assignments of error are overruled.

### Dr. Chu's Cross–Assignment of Error III

"The trial court committed reversible error by failing to submit a proposed special interrogatory directing the jury to specify what amount of compensation was being allocated for each injury found."

This claimed error is closely related to Dr. Chu's first cross-assignment of error. Under his first assignment of error, he contends there was no evidence supporting a finding that Dr. Chu caused Robert to be permanently impotent. Believing that any award to Robert based on his impotence would be erroneous, Dr. Chu proposed a jury interrogatory. That interrogatory asked the

jury to break down the amount of the total award and allocate the amount given for each compensable injury, thereby indicating any amount awarded for Robert's impotency. Dr. Chu claims the trial court committed error in rejecting this proposed interrogatory.

While a trial court has a mandatory duty to submit written interrogatories upon the request of any party, *Ragone v. Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St.2d 161, 71 O.O.2d 164, 327 N.E.2d 645, paragraph one of the syllabus, pursuant to Civ.R. 49(B), the proposed interrogatories must "elicit facts whereby the correctness of the general verdict may be tested." *Davison v. Flowers* (1930), 123 Ohio St. 89, 96, 174 N.E. 137, 139. A trial court has no obligation to submit interrogatories which are "not based upon the evidence, are ambiguous, or are otherwise legally objectionable." *West v. Vajdi* (1987), 39 Ohio App.3d 60, 61, 528 N.E.2d 1289, 1291.

In the present case, we need not decide whether the court erred in rejecting Dr. Chu's interrogatory. In light of our holding under the first and second cross-assignments of error, no substantial right of Dr. Chu's was affected in rejecting the interrogatory and, accordingly, any error was harmless. *Leichtamer v. Am. Motors Corp.* (1981), 67 Ohio St.2d 456, 474–475, 21 O.O.3d 285, 297, 424 N.E.2d 568, 581. See, also, Civ.R. 61.

Dr. Chu's third cross-assignment of error is overruled.

### Dr. Chu's Cross–Assignment of Error IV

"A new trial on the issue of damages should be limited to a determination of the value of those injuries previously found by the jury which are supported by the evidence."

Based on our findings that there was sufficient evidence supporting the jury's finding that Robert was rendered permanently, organically impotent as a result of Dr. Chu's negligence, this assignment of error is moot.

Based on the foregoing, the judgment of the trial court is affirmed in all respects.

*Judgment affirmed.*

BAIRD, P.J., and COOK, J., concur.