KLEIN et al., Appellees,

v.

LEIS, Sheriff, et al., Appellants.

[Cite as *Klein v. Leis*, 146 Ohio App.3d 519, 2002-Ohio-1634.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–020012, C–020013, C–020015 and C–020021.

Decided April 10, 2002.

528

Betty D. Montgomery, Attorney General, Darrell M. Pierre, Jr., and David S. Timms, Assistant Attorneys General, for the state of Ohio appellants.

Michael K. Allen, Hamilton County Prosecuting Attorney, John J. Arnold and David Stevenson, Assistant Prosecuting Attorneys, for the county, township, and municipal appellants.

Fay D. Dupuis, Cincinnati City Solicitor, Richard Ganulin, Assistant City Solicitor, and Jonathan E. Lowy, Brady Center to Prevent Gun Violence Legal Action Project, for the city of Cincinnati and all city appellants.

William M. Gustavson and Timothy A. Smith, for appellees.

Johnson & Moran Co., Michael R. Moran and Eric A. Johnson, urging affirmance for amicus curiae Ohio Association of Security & Investigation Service.

---

MARK P. PAINTER, Presiding Judge.

{¶ 1} This court cannot rule on the propriety or efficacy of citizens carrying concealed weapons. In our tripartite government, the legislature makes the statutory laws. But those laws must comport with the United States and Ohio Constitutions. The court's role is limited to determining the constitutionality of the laws that the legislature enacts.

{¶ 2} The General Assembly has enacted laws dealing with concealed weapons. The issue today is R.C. 2923.12. It bans carrying concealed weapons, but seeks to establish certain limited affirmative defenses to the ban. R.C. 2923.12 is unconstitutional under the Ohio Constitution (and arguably under the United States Constitution, but we do not reach the issue of whether it violates the Second Amendment). Similarly, R.C. 2923.16(B) and (C) ban the transportation of loaded firearms in a motor vehicle. But that prohibition is also subject to the limited and unconstitutionally vague affirmative defenses of R.C. 2923.12.[1] Those statutes are unconstitutional also.

{¶ 3} There is no doubt that the Ohio Constitution grants citizens the right to possess, and to bear, arms. That is exactly what it says.

{¶ 4} The Ohio Constitution, Section 4, Article I, states, "The people have the right to bear arms for their defense and security * * *." The framers of the Ohio Constitution did not add this and others in a "bill of rights" as amendments, as in the United States Constitution. They put the citizens' rights right up front, in Article I. We believe they meant what they said. Concerning weapons, they did not add the "well-regulated militia" language of the Second Amendment, which has tended to create doubt about its proper interpretation. (They did add a provision against standing armies, in time of peace, but Ohio has no standing armies.)

---

1. See R.C. 2923.16(E).

{¶ 5} Additionally, R.C. 4749.06 and 4749.10 set forth presumably constitutional procedures under which a private investigator may acquire a permit to carry a gun. But R.C. 4749.08(A) states, "Nothing in this chapter shall be construed as granting the right to carry a *concealed* weapon." (Emphasis added.) The statutes do not prohibit anything; they just state that they—in themselves—do not allow concealed carrying. To carry a concealed weapon, private investigators today must rely on R.C. 2923.12. Because we hold that R.C. 2923.12 is unconstitutional, we need not address R.C. 4749.06 and 4749.10.

{¶ 6} While we do not need to reach the issue of whether R.C. 2923.12 violates the Second Amendment to the United States Constitution, we question whether the Second Amendment's "militia" language, often cited for the proposition that only a militia may carry weapons, is any more restrictive than the "standing armies" language of the Ohio Constitution. Surely, no one would contend that a militia cannot bear arms. So why mention the *citizens'* rights? We are not England, where hunting was once the preserve of the landed rich; we are America, where the Pilgrims shot their Thanksgiving turkeys. We are not a country where power is maintained by people with guns over people without guns.

{¶ 7} If times have changed, and weapons are no longer necessary to procure food or safety (a dubious proposition), the proper course is to amend the Ohio Constitution. This court can deal only with the law as written.

## I. Regulation or Prohibition?

{¶ 8} Both sides to this dispute agree that the General Assembly has the power to regulate the bearing of arms, at least in some manner. Appellees here, for instance, did not, and do not, seek to invalidate R.C. 2923.17, which prohibits dangerous ordnance—bombs, explosives, machine guns, sawed-off shotguns, and the like. And persons under a disability, such as convicted criminals, the drug-addicted, and the mentally incompetent, are properly constrained from association with weapons under R.C. 2923.13.

{¶ 9} The problem with R.C. 2923.12 is that it does not simply regulate, but effectively prohibits, law-abiding citizens from bearing weapons. Further, the affirmative defenses the statute seeks to create are incomprehensible to the ordinary citizen. Because the defenses are vague and subjective, the law is susceptible to inconsistent and arbitrary enforcement.

## II. Presumption of Guilt

{¶ 10} The core of the dispute here is R.C. 2923.12, which totally prohibits *any* law-abiding person from carrying a concealed weapon. The total prohibition is then followed by a list of exceptions, or, more properly, affirmative defenses. The practical effect of this statute is that any person carrying a concealed weapon

is subject to arrest, incarceration, and indictment *before* being able to establish the legality of his or her actions. Thus, a legal action subjects an innocent person to prosecution for a felony. It is only later, at the peril of a trial, that innocence may be established.

{¶ 11} Guns or no guns, we know of no other situation where a citizen is guilty until proven innocent. And no one has been able to tell us how someone walking might legally move a firearm from one location to another—if the gun is visible, a citizen will be arrested for inducing panic; if it is concealed, for violating R.C. 2923.12.

{¶ 12} A law-abiding citizen may not be subject to arrest, incarceration, indictment, trial, appeal, legal fees, and the possibility of loss of freedom for doing a legal act.

{¶ 13} It is the very real threat of arrest, incarceration, indictment, and trial that provided the appellees with the standing to request a declaratory judgment on the constitutionality of R.C. 2923.12. To obtain declaratory relief, a plaintiff must establish that a real controversy exists between the parties, that the controversy is justiciable, and that speedy relief is necessary to preserve the rights of the parties.[2] The real threat of prosecution for a violation of a criminal statute is sufficient to confer standing—an actual violation of the statute and prosecution is not required.[3] Since the plaintiffs in this case established that they or their members carry concealed weapons, and since evidence presented in the trial court makes clear that they are subject to arrest for doing so, they had standing to seek a declaratory judgment. We thus overrule the appellants' assignments of error that assert otherwise.

### III. Carry a Gun, Concealed or Unconcealed, and Go Directly to Jail

{¶ 14} As previously stated, Section 4, Article I of the Ohio Constitution grants the people of Ohio "the right to bear arms for their defense and security." In *Arnold v. Cleveland*, the Ohio Supreme Court recognized that this right to bear arms is a "fundamental *individual* right."[4] The court also held that "[t]o

---

2. See R.C. 2721.03; *Burger Brewing Co. v. Ohio Liquor Control Comm.* (1973), 34 Ohio St.2d 93, 63 O.O.2d 149, 296 N.E.2d 261, paragraph one of the syllabus, citing *Am. Life & Acc. Ins. Co. v. Jones* (1949), 152 Ohio St. 287, 40 O.O. 326, 89 N.E.2d 301, paragraph two of the syllabus; *R.A.S. Entertainment, Inc. v. Cleveland* (1998), 130 Ohio App.3d 125, 128, 719 N.E.2d 641.

3. See *Pack v. Cleveland* (1982), 1 Ohio St.3d 129, 131, 1 OBR 166, 438 N.E.2d 434, citing *Peltz v. S. Euclid* (1967), 11 Ohio St.2d 128, 40 O.O.2d 129, 228 N.E.2d 320, paragraph one of the syllabus; *Jukelson v. Hunter* (1969), 22 Ohio App.2d 182, 186, 51 O.O.2d 352, 259 N.E.2d 749.

4. See *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 43, 616 N.E.2d 163 (emphasis sic), citing *State v. Hogan* (1900), 63 Ohio St. 202, 218–219, 58 N.E. 572.

deprive our citizens of the right to possess any firearm would thwart the right that was so thoughtfully granted by our forefathers and the drafters of our Constitution."[5]

{¶ 15}  Typically, legislative restrictions on fundamental constitutional rights must pass the highest level of judicial review—strict scrutiny.  Under this standard, a law that seeks to limit the exercise of a fundamental right is presumed to be unconstitutional unless the state can prove that it is necessary to promote a compelling governmental interest,[6] and that it is narrowly tailored to accomplish that goal.

{¶ 16}  But according to precedent established by the Ohio Supreme Court in *Arnold,* the test we are required to apply is one of "reasonableness"—whether the legislation is "fair, proper, moderate, suitable under the circumstances and not excessive."[7]  We believe, as did the trial court in this case, and as did Judge Hoffman in his dissent in *Arnold,*[8] that strict scrutiny is the appropriate standard to be applied to legislation impinging upon fundamental rights.  We hope that the Ohio Supreme Court will use this case as a vehicle to clarify the constitutional paradox created by the *Arnold* decision.  But as we are bound to follow our Supreme Court, we must presume that the legislation is constitutional unless the appellees have proved it to be unreasonable.  The record in this case demonstrates that the statute is unreasonable.  It passes *no* level of judicial scrutiny.

{¶ 17}  The appellants in this case—the state of Ohio, the city of Cincinnati, and a host of townships and municipalities—seek to characterize R.C. 2923.12 as a reasonable restriction on the manner in which citizens of Ohio may exercise their constitutional right to bear arms for their safety and security.  They cite an Ohio Supreme Court case from 1920, *State v. Nieto,* in which a statute that prohibited a person from carrying "a pistol, bowie knife, dirk, or other dangerous weapon concealed on or about his person" was challenged on state constitutional grounds.[9]

{¶ 18}  The *Nieto* court held that the statute was constitutional, reasoning that it "[did] not operate as a prohibition against carrying weapons, but as a

---

5.  See *Arnold* at 43, 616 N.E.2d 163.

6.  See *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 423, 633 N.E.2d 504, citing *Shapiro v. Thompson* (1969), 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600, and *Primes v. Tyler* (1975), 43 Ohio St.2d 195, 198–199, 72 O.O.2d 112, 331 N.E.2d 723.

7.  Id. at fn. 12.

8.  Id. at 53, 616 N.E.2d 163 (Hoffman, J., dissenting.)

9.  See *State v. Nieto* (1920), 101 Ohio St. 409, 412, 130 N.E. 663, quoting G.C. 12819.

regulation of the manner of carrying them. The gist of the offense [was] the concealment."[10]  Presumably then, in 1920, one could carry a pistol, bowie knife, dirk, or other dangerous weapon on or about his person, provided only that it was not concealed.  But today, one may not.  Today, as the trial court found and the record reflects, if one were to openly carry a firearm, one would be arrested for inducing panic [11] or for disorderly conduct.[12]  Further, we believe that *Arnold v. Cleveland* has superseded *Nieto*.

{¶ 19}  Rather than view this case myopically, as the appellants urge us to do, and consider only a single statute in isolation, we must consider a broader scope. And the broader scope, as the evidence introduced in the trial court reflects, is that R.C. 2923.12, in conjunction with other statutes and the practice of arrest for openly carrying a firearm, acts as a total prohibition on the carrying of firearms. Either way the citizen goes to jail.  No Ohioan can exercise the constitutional right to bear arms, whether concealed or unconcealed, without risking jail.

{¶ 20}  The exercise of no other fundamental right subjects a citizen to arrest. Should a citizen first go to jail for voting, and be required to prove innocence of multiple voting?  Should a citizen first go to jail for marrying, and then get out by proving innocence of bigamy?  Should we jail people for publishing a newspaper, then require them to prove that what was published was not libelous or obscene?

{¶ 21}  We hold today that R.C. 2923.12 is not fair, proper, moderate, or suitable under the circumstances, and that it is indeed excessive.  It acts to deprive law-abiding citizens of the right to bear *any* arms and, in so doing, thwarts a fundamental right that was granted by our forebears and the drafters of our Ohio Constitution.

### IV.  But Will You Be Convicted?

{¶ 22}  Ohio's total ban on concealed weapons contains affirmative defenses that purport to define when it would be legal to carry a concealed weapon. The appellants argue that these affirmative defenses save the statute because they provide reasonable exceptions to the general ban.  But these affirmative defenses do not save the statute for two reasons.

{¶ 23}  First, as we have previously noted, the record reflects that these affirmative defenses are largely ignored at the initial point of contact between a

---

10.  Id. at 413, 130 N.E. 663.

11.  See R.C. 2917.31.

12.  See R.C. 2917.11.

citizen and an officer. The act of carrying a concealed weapon typically results in arrest, and affirmative defenses are sorted out later. The practical effect then is to expose a citizen to arrest, indictment, and prosecution for what later may be determined to have been the legal exercise of a fundamental right. And that, as we have held above, cannot be.

{¶ 24} Second, the affirmative defenses are unconstitutionally vague. They may not be understood by a citizen of reasonable intelligence, and they are susceptible to arbitrary enforcement.

{¶ 25} The first affirmative defense is that a citizen may carry a concealed weapon provided that it is (1) carried for defensive purposes, (2) while the citizen is engaged in a lawful business, (3) when it is necessary to conduct the business at a time and place that renders the citizen "particularly susceptible to criminal attack," such that (4) a "prudent person" would be justified in going armed.[13]

{¶ 26} A second affirmative defense to the crime of carrying a concealed weapon may be asserted when the weapon is carried (1) for defensive purposes, (2) while the citizen is engaged in a lawful activity, (3) and he has "reasonable cause" to fear a criminal attack upon himself, a member of his family, or his home, (4) that would justify a "prudent person" in going armed.[14]

{¶ 27} The third defense is that a weapon may be kept at hand for any "lawful purpose" in one's own home.[15]

{¶ 28} Finally, R.C. 2923.12(C)(4) states that a weapon, other than a firearm, may be transported in a motor vehicle for any lawful purpose if the weapon is not "on the actor's person." But if the weapon is a firearm, then the citizen must also comply with the dictates of R.C. 2923.16(C). According to that statute, a citizen may only transport a loaded firearm in a motor vehicle if it is not accessible without leaving the vehicle,[16] unless one of the two affirmative defenses under R.C. 2923.12(C)(1) or (C)(2) is applicable.[17]

{¶ 29} In this case, evidence adduced at trial demonstrated that a senior police official with many years of law enforcement experience could not determine

---

13. See R.C. 2923.12(C)(1).

14. See R.C. 2923.12(C)(2).

15. See R.C. 2923.12(C)(3).

16. See R.C. 2923.16(B).

17. See R.C. 2923.16(E).

whether an affirmative defense was applicable. The witness testified that he would have needed to call a prosecutor or an attorney. If a senior law enforcement official cannot properly apply the affirmative defenses to a given situation, the average citizen of ordinary intelligence could be expected to fare no better. We consider ourselves persons of average intelligence, and we cannot tell what is legal and what is not. As written, the affirmative defenses are unconstitutionally vague—they do not provide clear warning of the conduct that they seek to exempt from criminal liability.

{¶ 30} " 'Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.' "[18] Thus, vague laws may trap the unwary because they do not provide adequate warning of the conduct that they seek to prohibit. " 'Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis.' "[19] Vagaries are not law.

{¶ 31} A statute may be held unconstitutionally vague if "a person of common intelligence" is unable to determine what conduct is prohibited, or if the statute fails to "provide sufficient standards to prevent arbitrary and discriminatory enforcement."[20] The record reflects that R.C. 2923.12(C)(1) through (4) fail both prongs of the test. They do not save the ban on carrying concealed weapons—they simply add a layer of confusion. And because R.C. 2923.16(B) and (C) rely upon the affirmative defenses for interpretation and contribute to the total prohibition against bearing arms, they are also unconstitutional.

{¶ 32} Trial courts have applied the law inconsistently, and appellate courts have done no better.[21] We mention these decisions of our colleagues not to

18. See *Perez v. Cleveland* (1997), 78 Ohio St.3d 376, 378, 678 N.E.2d 537, quoting *Grayned v. Rockford* (1972), 408 U.S. 104, 108–109, 92 S.Ct. 2294, 33 L.Ed.2d 222.

19. Id.

20. See *State v. Williams* (2000), 88 Ohio St.3d 513, 532, 728 N.E.2d 342, citing *Chicago v. Morales* (1999), 527 U.S. 41, 56–57, 119 S.Ct. 1849, 1859, 144 L.Ed.2d 67, and *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 358, 588 N.E.2d 116, 120.

21. See *State v. Doss* (1996), 111 Ohio App.3d 63, 74–75, 675 N.E.2d 854, 861, citing *State v. Assad* (1992), 83 Ohio App.3d 114, 614 N.E.2d 772; *State v. Orin* (1992), 84 Ohio App.3d 812, 818–821, 619 N.E.2d 14 (Grey, J., concurring); *State v. Westfall* (Oct. 4, 2000), Summit App. No. 19599, 2000 WL 1471060; *State v. Foltz* (June 28, 1999), Fairfield App. No. 98CA58, 1999

criticize, but only to demonstrate that vague statutes are open to subjective interpretation, rather than objective application. The result, which is confusing or opaque to the average citizen—and to police officers, lawyers, judges, and jurors—is an unconstitutional delegation of public-policy matters. When the police, the citizens, and the courts all must guess at the meaning of a criminal statute, subjective and arbitrary enforcement results.

{¶ 33} Citizens of ordinary intelligence, experienced police officers, and the court system all have had difficulty discerning what the General Assembly intended to be an affirmative defense to the charge of carrying a concealed weapon. Thus, to exercise a fundamental constitutional right, citizens must chance their liberty to the vagaries of what a random judge or jury might find "reasonable." Constitutional rights may not rest on a foundation of quicksand.

{¶ 34} We affirm the judgment of the trial court that the affirmative defenses are unconstitutionally vague, that vagueness renders the general prohibition in R.C. 2923.12 a total prohibition that is unconstitutional on its face, and that those statutes that force reliance upon them are also constitutionally infirm. We overrule the appellees' assignments of error to the contrary.

## V. Alleged Bias of Trial Judge

{¶ 35} The city of Cincinnati, and to a lesser degree the county, township, and municipal appellants, make much of the alleged bias of the trial judge (Judge Ruehlman's wife and infant daughter were abducted at gunpoint in 1989).[22] When bias is based on facts known at the time the trial judge is deciding the case, the sole remedy is an appeal to the Chief Justice of the Ohio Supreme Court.[23] The city has maintained that the bias in this case arose too late to take that path. The city assigns the following as error:

{¶ 36} "The trial court violated the Code of Judicial Conduct, disregarded the plaintiffs' lack of standing, spited stare decisis, usurped legislative authority, ignored burden of proof, made clearly erroneous findings, misapprehended the law, and otherwise abused its discretion."

---

WL 547592; *State v. Hmidan* (May 7, 1999), Montgomery App. No. 17161, 1999 WL 318366; *State v. Timony* (Oct. 7, 1998), Summit App. No. 18891, 1998 WL 696872; *State v. Penwell* (Oct. 18, 1994), Franklin App. No. 94APA04–552, 1994 WL 579672.

22. For facts underlying the bias allegation, see the following:
   http://enquirer.com/edit ions/2002/01/04/loc_citys_request_that.html;
   http://www.cincypost.com/2002/jan/03/judge010302.html

23. See *Goddard v. Children's Hosp. Med. Ctr.* (2000), 141 Ohio App.3d 467, 473, 751 N.E.2d 1062, citing *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 441–442, 8 O.O.3d 438, 377 N.E.2d 775.

{¶ 37}  Declaring an unconstitutional statute unconstitutional is not judicial bias—it is judicial duty.  Based on the law and the record before him, the trial judge had no choice but to rule as he did.  Neither do we, regardless of our personal opinions.  If Judge Ruehlman had ruled the other way, we would have reversed him.

{¶ 38}  All judges bring the sum total of life's experiences to their courtrooms. While we strive to be free of bias or prejudice, we should not disregard our knowledge of humanity—our experiences in the ways of the world.

{¶ 39}  We would not hesitate to criticize a judge who crosses the line.  But the city's attack on the trial judge in this case is offensive.  Judging can often be a lonely and thankless job;  one side of any dispute is always unhappy.  We expect the normal slings and arrows of outrageous criticism.  But to be subject to unwarranted allegations of bias-based on an event that might at first blush arguably create bias, if any, in the other direction—is beyond justification.

{¶ 40}  We overrule the appellants' allegations.

## VI.  *Evidentiary Issues*

{¶ 41}  The appellants have collectively assigned a variety of errors to the trial court's evidentiary rulings.  The assignments may be consolidated and recast as follows:  (1) the court relied too much on the appellees' expert, and (2) the court did not rely enough on the appellants' expert.  We overrule these assignments.

{¶ 42}  At issue is the testimony of two experts.  Dr. David B. Mustard is an economics professor from the University of Georgia.  He testified for the appellees that, according to his studies, states that had enacted some form of legislation permitting law-abiding citizens to carry concealed weapons had not experienced a rise in violent crime, accidental deaths, or felonious police deaths. Instead, he testified that a statistically significant reduction had occurred in violent crime—murder, rape, robbery, and aggravated assault—with the most profound impact found in urban areas.  Mustard also conceded that some experts in his field disagreed with his methodology, and that reasonable people might differ on the efficacy of various concealed-carry laws.

{¶ 43}  Professor Franklin E. Zimring is a law professor at the University of California at Berkeley.  Zimring has written extensively on firearm regulations. He testified for the appellants that, in his opinion, Ohio's concealed-carry laws were a reasonable attempt to (1) reduce the deadliness of assaults and robberies in public places, (2) provide the police with a basis for early intervention before a more dangerous crime occurred, and (3) ensure the safety of police officers.  He also testified that no state with significant urban areas allowed the unrestricted carrying of weapons. But he conceded that he was not familiar with all of the

related Ohio statutes regulating access to weapons, such as those that prohibit persons under a disability from acquiring or possessing a weapon.

{¶ 44} From the trial court's findings of fact and conclusions of law, it is clear that the court found Mustard's testimony helpful. Indeed, the court adopted much of it. But the court gave no weight to Zimring's opinions and, even though the testimony remains part of the record in this appeal, stated that it "should be stricken from the record."

{¶ 45} Initially, we note that "the determination of an expert's qualifications to testify on a particular subject is within the sound discretion of the trial court."[24] An abuse of discretion is more than an error of law or judgment—it implies that the court's attitude was unreasonable, arbitrary, or unconscionable.[25] We can discern no abuse of discretion in the trial court's admission of either expert's testimony. Nor can we determine that the court was speaking literally when it suggested that Zimring's testimony should have been stricken. But we believe that the trial court, in its "gatekeeper" role, could have excluded Zimring's testimony. We hold that both experts' opinions are properly part of the record and overrule any assignment of error to the contrary.

{¶ 46} Next, we turn to the weight the trial court gave each expert's testimony. The weight and credibility that is to be given to evidence, including expert testimony, are within the discretion of the trier of fact—in this case, the trial court.[26] The court was free to accept all, part, or none of any expert witness's testimony, whether it was merely evidential or tended to prove the ultimate fact.[27]

{¶ 47} We hold that the trial court did not abuse its discretion in assigning no weight to Zimring's testimony. His opinion regarding Ohio's concealed-carry laws was of limited usefulness because the record reflects that it was not considered in the context of Ohio's other laws, law enforcement practices,

---

24. See *State v. Jones* (2000), 90 Ohio St.3d 403, 414, 739 N.E.2d 300, citing *State v. Awkal* (1996), 76 Ohio St.3d 324, 331, 667 N.E.2d 960.

25. See *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 152, 569 N.E.2d 875.

26. See *Kokitka v. Ford Motor Co.* (1995), 73 Ohio St.3d 89, 92, 652 N.E.2d 671, citing *State v. Thomas* (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356; *Vetter v. Hampton* (1978), 54 Ohio St.2d 227, 230, 8 O.O.3d 198, 375 N.E.2d 804; *Clark v. Clark* (Sept. 1, 1998), Franklin App. No. 97APF10–1360, 1998 WL 614633.

27. See *McKay Machine Co. v. Rodman* (1967), 11 Ohio St.2d 77, 82, 40 O.O.2d 87, 228 N.E.2d 304; *Bailey v. Emilio C. Chu, M.D., Inc.* (1992), 80 Ohio App.3d 627, 635, 610 N.E.2d 531.

or the state Constitution. Simply because a law professor believes that a statute is reasonable does not make it so.

{¶ 48} Similarly, the court was free to adopt Mustard's testimony. He essentially testified that when states passed some form of legislation that allowed law-abiding citizens to carry concealed weapons, there was minimal detrimental effect and a small positive impact in key areas. This may be comforting should Ohio enact such laws. And it may tend to show that Ohio's concealed-carry laws are stricter than necessary. But it does not bear directly on the reasonableness of the current statute. That statute is unreasonable because it, in conjunction with the practice of arrest for openly carrying a weapon, effectively prohibits law-abiding citizens from exercising the constitutional right to bear arms, and because it is vague. Thus, while we do not find the testimony crucial to the resolution of the issue in this case, we hold that the court did not abuse its discretion in considering it.

### VII. The County, Township, and Municipal Appellants

{¶ 49} Finally, the county, township, and municipal appellants claim that the trial court erred by failing to dismiss them from the action. Their sole argument supporting this assignment is that, in enforcing state laws, they are acting as agents of the state. In the absence of any further explanation, we construe this argument to mean that if the trial court were to have enjoined the state from enforcing R.C. 2923.12, then the county, township, and municipal appellants would have been bound by the injunction as the state's agents.[28] Thus, according to these appellants, they were not necessary parties for the adjudication.

{¶ 50} The law requires that when, as in this case, declaratory relief is sought, any entities that "have or claim any interest that would be affected by the declaration shall be made parties to the action or proceeding."[29] Clearly, the county, township, and municipal appellants have an interest in R.C. 2923.12. They cite no law for the proposition that, as agents, they are entitled to withdraw at their discretion. We thus overrule the final assignment of error.

### VIII. R.C. 2923.12 and R.C. 2923.16(B) and (C) are Unconstitutional

{¶ 51} Perhaps the General Assembly can, or will, enact a concealed-weapon law that is constitutional. But this court can only deal with what we have before us, which is an unconstitutional law. Because R.C. 2923.12 violates the Ohio

**28.** See Civ.R. 65(D).

**29.** R.C. 2721.12.

Constitution, it is void. We affirm the trial court's judgment to the extent that it grants declaratory relief and enjoins the several defendants from enforcing R.C. 2923.12 and 2923.16(B) and (C). We modify the injunction to delete the reference to R.C. 4749.06 and 4749.10. Because R.C. 2923.12 is unconstitutional, these sections are innocuous.

### IX. We Grant No Further Stay

{¶ 52} This court granted a stay during this appeal. In addition, the General Assembly has been on notice of the problems with this statute for more than a year. We will not continue to allow the enforcement of an unconstitutional statute. We grant no further stay.

Judgment affirmed
as modified.

DOAN and HILDEBRANDT, JJ., concur.